Joe SUMARON et al., Plaintiffs,

v.

INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION and International Longshoremen's and Warehousemen's Union—Pacific Maritime Associated Joint Labor Relations Committee and Pacific Maritime Association, Defendants.

No. CV 77–3107–AAH.

United States District Court, C. D. California.

May 4, 1978.

David H. Greenberg, Beverly Hills, Cal. and Adler, Barish, Daniels, Levin & Creskoff by Avram G. Adler, Philadelphia, Pa., for plaintiffs.

Gladstein, Leonard, Patsey & Andersen by Richard L. Patsey, San Francisco, Cal., for defendant Int'l Longshoremen's and Warehousemen's Union.

Gibson, Dunn & Crutcher by Kenneth E. Ristau, Jr., Dennis A. Gladwell, and William D. Claster, Newport Beach, Cal., for Pac. Maritime Ass'n individually and as member of Joint Port Labor Relations Committee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

Pursuant to Local Rule 3(g) and Rules 52 and 56 of the Federal Rules of Civil Procedure, the Court hereby finds the following facts and makes the following conclusions of law:

### A. *FINDINGS OF FACT:*

1. Plaintiffs are 84 members of International Longshoremen's and Warehousemen's Union, Local 13.

2. The plaintiffs in this action are the same individuals referred to as "terminal warehousemen" in the cases of *International Longshoremen's and Warehousemen's Union, Local 13* (1970), 183 NLRB 221; *International Longshoremen's and Warehousemen's Union, Local 13* (1971), 192 NLRB 260; *International Longshoremen's and Warehousemen's Union, Local 13* (1974), 210 NLRB 952; and *NLRB v. International Longshoremen's and Warehousemen's Union, Local No. 13* (9th Cir. 1977), 549 F.2d 1346, *cert. denied,* 434 U.S. 922, 98 S.Ct. 397, 54 L.Ed.2d 279 (1977).

3. Defendant Pacific Maritime Association ("PMA") is an employers' association which represents shipping companies, stevedore companies and terminal operators on the West Coast for collective bargaining purposes. PMA has now, and has had for over twenty years, a collective bargaining relationship with defendant International Longshoremen's and Warehousemen's Union.

4. Defendant International Longshoremen's and Warehousemen's Union ("ILWU") is a labor organization. International Longshoremen's and Warehousemen's Union, Local 13 is the local union with whom the PMA deals on a day-to-day basis in connection with all labor matters relating to longshoremen in the Los Angeles-Long Beach Port.

5. Defendant International Longshoremen's and Warehousemen's Union-Pacific Maritime Associated Joint Labor Relations Committee ("Joint Committee") is a joint labor relations committee which is made up of Local 13 and PMA members and which regulates dispatching and registration of longshoremen in the Los Angeles-Long Beach Port area.

6. The collective bargaining relationship of the ILWU and the PMA consists, *inter alia,* of the 1975–1978 Pacific Coast Longshore Contract Document ("PCLCD" herein) and the 1966–1971 Container Freight Station Supplement to the Pacific Coast Longshore and Clerks Agreement ("CFS" herein), as amended from time to time and as presently existing at all times pertaining hereto.

7. Pursuant to said PCLCD (and to predecessor contracts between PMA and ILWU), a registration system exists whereby longshore employees are classified as Class "A" registered longshoremen, Class "B" registered longshoremen, and casual longshoremen. In each port first preference in dispatch to longshore jobs is given to Class "A" registered longshoremen, and second preference is given to Class "B" registered longshoremen. When no Class "A" or Class "B" men are available for work, unregistered men or casuals may be dispatched.

8. Plaintiffs in this action are a category of unregistered or casual employees known as Terminal Warehousemen ("TWs"). Plaintiffs claim that as TWs they were promised registration by the defendants, but have been passed over in favor of other individuals. Plaintiffs further claim that defendant ILWU has failed to represent them fairly as to registration and as to securing fringe benefits for them.

9. Since at least 1969, and to and including the present date, the plaintiffs and each of them have had knowledge or been on notice of the manner in which the Joint Committee and the PMA have registered

longshoremen, and since at least that year and on every day thereafter until the present date, have had knowledge or been on notice of the number and identities of longshoremen actually registered.

10. Since 1969, the PMA and the Joint Committee have refused to register the plaintiffs as longshoremen. Since at least 1969, and to and including the present date, the plaintiffs have known or had notice of that fact.

11. The plaintiffs have not provided any evidence sufficient to indicate that either the PMA or the Joint Committee ever promised or represented to the plaintiffs that they would be registered as longshoremen. Had such promises been made, the plaintiffs would have known or been on notice from at least 1970 to and including the present date that any such alleged promises or representations would not be kept or were false.

12. From at least 1970 to and including the present date, the plaintiffs had sufficient facts at their disposal to put them on notice that the PMA and the Joint Committee were not going to register them as longshoremen notwithstanding whatever representations or promises, if any, were made to the plaintiffs to the contrary.

13. The claims asserted in this action by the plaintiffs are subject to the grievance and arbitration provisions of either the PCLCD or the CFS or both. Plaintiffs have failed to file grievances or pursue arbitrations pursuant to the provisions contained in said documents with respect to the claims presented in this action.

14. It would not be futile for plaintiffs to pursue the instant claims through the grievance and arbitration procedures of either the PCLCD or the CFS or both.

15. Defendant ILWU does not contribute any funds to the payment of wages or fringe benefits, including pension and retirement benefits for longshore employees or terminal warehouse employees, such as plaintiffs herein. Defendant ILWU has not in any fashion obtained, withheld, or deducted said funds and is not in actual or constructive possession of said funds.

B. *CONCLUSIONS OF LAW:*

1. The following conclusions of law, insofar as they may be considered mixed questions of fact and law, are also found by the Court to be true in all respects.

■ 2. By not adjudicating their claims through the grievance and arbitration procedures of the PCLCD and the CFS plaintiffs have failed to exhaust their available administrative remedies thereunder.

■ 3. Plaintiffs' claims for relief under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401, *et seq.,* under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the state law doctrine of unjust enrichment (first, third, fourth, fifth, and sixth causes of action) are all governed by the statutes of limitations applicable to said claims under the law of California, the state in which said claims allegedly arose.

4. Because said claims may be viewed as either tort or contract claims, the longest limitation period applicable to said claims is the four-year limitation period set forth in California Code of Civil Procedure, § 337.

5. Because said claims arose in 1970, and because plaintiffs had knowledge or notice of said claims from at least 1970 to and including the present date, said claims and each of them are barred by the applicable statute of limitations.

6. In 1970, in *International Longshoremen's and Warehousemen's Union, Local 13* (the *Gatlin* case) (1970), 183 NLRB 221, the National Labor Relations Board ("NLRB"), after a full hearing, ruled that Local 13 violated Sections 8(b)(1)(A) and (2) of the National Labor Relations Act ("Act"), 29 U.S.C. §§ 158(b)(1)(A) and (2), by requiring, *inter alia,* that all applicants for registration as Class "B" Longshoremen be sponsored by Class "A" registrants, who were also union members.

7. In 1971, *International Longshoremen's and Warehousemen's Union, Local 13*

(the *PMA* case), (1971), 192 NLRB 260, the NLRB, after a full hearing, found that Local 13 violated these same sections of the Act by, *inter alia,* (1) continuing to require that applicants for Class "B" registration be sponsored by a member of Local 13; (2) operating an exclusive hiring hall in a manner which discriminated against nonunion men in referrals; and (3) unlawfully attempting to obtain preference in Class "B" registration for TW members over nonmembers, thereby preventing the registration and subsequent dispatch of nonmembers on a nondiscriminatory basis.

8. Following a consolidation proceeding wherein the *Gatlin* and *PMA* cases were both reconsidered, the NLRB, after a full hearing, reaffirmed these findings. *International Longshoremen's and Warehousemen's Union, Local 13* (1974), 210 NLRB 952.

9. The foregoing three NLRB decisions were enforced by the Ninth Circuit Court of Appeals in *NLRB v. International Longshoremen's and Warehousemen's Union, Local No. 13* (9th Cir. 1977), 549 F.2d 1346, *cert. denied* 434 U.S. 922, 98 S.Ct. 397, 54 L.Ed.2d 279 (1977).

■ 10. Based on the NLRB decisions in *International Longshoremen's and Warehousemen's Union, Local 13* (1970), 183 NLRB 221; *International Longshoremen's and Warehousemen's Union, Local 13* (1971), 192 NLRB 260; and *International Longshoremen's and Warehousemen's Union, Local 13* (1974), 210 NLRB 952, and the decision of the Ninth Circuit Court of Appeals in *NLRB v. International Longshoremen's and Warehousemen's Union, Local 13* (9th Cir. 1977), 549 F.2d 1346, preferential dispatching or registration of TW's constitutes a violation of the National Labor Relations Act.

11. The plaintiffs herein were represented by Local 13 in the foregoing decisions and were and are privies to those actions and are bound by the findings and law adjudged therein.

12. By virtue of the foregoing decisions the PMA and the Joint Committee are pre-cluded from granting preferential registrations to the plaintiffs. Moreover, plaintiffs are collaterally estopped from relitigating any issue decided in said proceedings and are bound by all facts found therein.

13. Longshore job opportunities, wages and health and pension benefits are matters which accompany and are directly dependent on registration as longshoremen. Plaintiffs would have no right to these benefits and wages unless they were registered as longshoremen.

14. Plaintiffs' complaint and each purported claim for relief thereunder is barred by the doctrine of collateral estoppel.

15. Local 13 is an indispensable party to these proceedings.

16. Complete relief could not be afforded in this case without the presence of Local 13.

17. Plaintiffs have failed to state a claim upon which relief can be granted.

18. There are no genuine issues covering any of the foregoing facts, and all such facts are material.

19. Defendants are entitled to summary judgment.

## JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Motions for Summary Judgment by the International Longshoremen's and Warehousemen's Union and the Pacific Maritime Association and Joint Labor Relations Committee came on for hearing on April 17, 1978, before the Honorable A. Andrew Hauk, District Judge, Central District of California. The Court having considered all matters and evidence submitted in support of and in opposition to the motions, the issues having been duly heard and oral argument having been taken, the following judgment is hereby made in accordance with the findings of fact and conclusions of law filed herewith.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motions for Summary Judgment by the Inter-

national Longshoremen's and Warehouse-men's Union and the Pacific Maritime Association and Joint Labor Relations Committee are granted, that judgment be entered accordingly, that plaintiffs take nothing by way of their complaint. Each party shall bear its own costs.

IT IS FURTHER ORDERED that this judgment be entered forthwith by the clerk of the Court.