The SINGER COMPANY, Appellant,

v.

The TAPPAN COMPANY.

No. 78–2012.

United States Court of Appeals,
Third Circuit.

Submitted Jan. 9, 1979.

Decided March 8, 1979.

John F. Pritchard, Stanley D. Davis, Winthrop, Stimson, Putnam & Roberts, New York City, Benjamin P. Michel, Riker, Danzig, Scherer & Debevoise, Newark, N.J., for appellant.

Barry L. Springel, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Jeffrey W. Lorell, Clapp & Eisenberg, Newark, N.J., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This is an appeal from the final judgment confirming an arbitration award. The parties disagree both as to the propriety of the entry of the judgment and as to the scope of the issues which it forecloses. As we construe the scope of the judgment we find that it was properly entered, and we affirm.

By a contract dated February 25, 1972, the Singer Company (Singer) agreed to purchase and The Tappan Company (Tappan) agreed to sell two manufacturing divisions of Tappan's Environmental Comfort Systems Group (ECSG). The purchase price was agreed to be 105% of the net book value of the two divisions as reflected in a Closing Balance Sheet. An estimate of that price, $17,500,000, was to be, and was in fact, paid at closing. The Closing Balance Sheet was to be prepared by Tappan and its accountant, and Tappan agreed to repay "all amounts, if any, by which the $17,500,-000 shall constitute an overpayment of the purchase price." The Closing Balance Sheet, so prepared, disclosed an overpayment of the purchase price of $91,000.00.

The contract also contemplated that there might be differences between Singer and Tappan with respect to the preparation of the Closing Balance Sheet. In Section 2.2 of the agreement it was therefore provided that the Closing Balance Sheet would be "prepared in accordance with generally accepted accounting principles consistent with those applied in preparation of the August 31, 1971 combining divisional balance sheet of ECSG included in Exhibit III to the A–S Agreement and including all normal year-end adjustments." The reference to "Exhibit III to the A–S Agreement" is to an agreement pursuant to which Tappan had previously acquired the ECSG from American Standard, Inc. It was further provided that Singer's accountants might raise objections to the Closing Balance Sheet "as to compliance thereof with the principles which the parties have agreed above shall be followed in its preparation" and as to inventory values. If the objections could not be resolved by agreement "the matter [would] be referred to arbitration before an arbitrator which shall be another national accounting firm to be selected by the parties . . .." Repayment of any overpayment was due "[w]ithin 10 days after receipt of the Closing Balance Sheet, which receipt shall occur upon resolution as provided above of any objection so raised. . . . ." Thus repayment became due ten days after submission of the Closing Balance Sheet if it was agreed upon, ten days after resolution of Singer's objections by agreement, or ten days after the conclusion of the arbitration.

As indicated above, the Closing Balance Sheet as submitted showed an overpayment of $91,000. Singer's accountant, however, objected that the balance sheet had not been prepared in accordance with the accounting principles contracted for, and that Singer was entitled to adjustments which would further reduce the purchase price, requiring a refund larger than $91,-000. Singer's objections were first raised in 1972, but meetings held at that time proved

inconclusive. Since repayment of any over-payment was technically not due until there was a resolution of Singer's objection to the Closing Balance Sheet, the $91,000 was not paid.

After raising its objections in 1972 Singer took no further steps to resolve the Closing Balance Sheet dispute until February 13, 1975, when it sent Tappan a letter demanding arbitration of its claims. Tappan refused to arbitrate, and Singer brought suit in the district court pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration. Tappan resisted this application, contending that the claims Singer sought to arbitrate were outside the scope of the arbitration clause, and that if they were within that clause arbitration was barred by laches, waiver, estoppel, or untimeliness of the demand under the terms of the agreement. The district court held that the dispute over the Closing Balance Sheet fell within the terms of the arbitration clause, and that the defenses on which Tappan relied in resisting arbitration were peculiarly for the arbitrator. *Singer Co. v. Tappan Co.*, 403 F.Supp. 322 (D.N.J. 1975), *aff'd*, 544 F.2d 513 (3d Cir. 1976). In dictum the court also said "[t]he $91,000 item may or may not be recoverable, but it is up to the arbitrator to make [this] decision, not this court." *Id.* at 331 n. 8. The reference to the $91,000 is ambiguous. It is clear from the language of the contract that repayment was not due until 10 days after disputes regarding the Closing Balance Sheet had been finally resolved. Probably the court meant no more than that the arbitrators could, in determining the proper application of the accounting principles contracted for, make both upward and downward adjustments of the 105% net book value price agreed upon, and hence in the $91,000 figure. It is quite clear that the agreement provided for arbitration only over adjustments to the Closing Balance Sheet, and not to any other matters which might be asserted in defense to a claim for the recovery of an overpayment.

Pursuant to the district court's order compelling arbitration the parties chose the accounting firm of Haskins & Sells as arbi-trator. Singer, Tappan and Haskins & Sells prepared an agreement captioned "Rules and Procedures for Arbitration." In it they defined the scope of arbitration as follows:

9. Scope of Arbitration. The arbitration shall be divided into two separate segments as described below.

(a) The Arbitrators shall first determine whether Singer is *barred from enforcing the arbitration provision of Section 2.2 of the Agreement to Purchase* ("the Agreement") dated February 25, 1972 between Singer and Tappan. Specifically, the Arbitrators shall determine whether arbitration is barred by laches, estoppel, waiver and/or by the timeliness terms of the Agreement. The parties shall initially submit Joint Instructions to the Arbitrators setting forth the legal principles applicable to these defenses by which they agree to be bound. Thereafter, hearings will be held on this segment of the arbitration until all evidence pertinent thereto has been offered by the parties. *If the Arbitrators decide that arbitration is barred, the arbitration shall be terminated in favor of Tappan.* If the Arbitrators decide that arbitration is not barred, they shall then proceed to the second segment of the arbitration as described in subsection (b) below.

(b) The Arbitrators shall next determine whether the combining divisional balance sheet of the Environmental Comfort Systems Group ("ECSG"), as of the close of business on January 31, 1972, which constitutes the Closing Balance Sheet referred to in the Agreement, was prepared in accordance with generally accepted accounting principles consistent with those applied in preparation of the August 31, 1971 combining divisional balance sheet of ECSG and including all normal year-end adjustments, with respect to the amounts set forth therein for "Allowance for Accounts Receivable" and "Estimated Future Warranty Costs" ("the Reserves") applicable to the Commercial Air Conditioning Division ("CACD"). All evidence (oral or documentary) offered in this segment of the

arbitration shall be limited only to matters which were known or should have been known at the time of the examination of the combined divisional balance sheet of ECSG as of January 31, 1972 by Arthur Young & Company. If the Arbitrators decide that the amount of the Reserves for CACD was determined in accordance with generally accepted accounting principles consistent with those applied in preparation of the August 31, 1971 combining divisional balance sheet of ECSG and including all normal year-end adjustments, the arbitration shall be terminated in favor of Tappan. Otherwise, the Arbitrators shall determine what the amount of the Reserves should have been under the aforesaid standard and enter an award accordingly.

(emphasis supplied). Thus the arbitration was divided into two independent segments: (1) whether the demand for arbitration was time barred; and (2) whether the Closing Balance Sheet was prepared in accordance with accounting principles contracted for. No other dispute was submitted to the arbitrators. On February 22, 1978, Haskins & Sells rendered its decision on the first segment of the arbitration as follows:

Pursuant to the Rules and Procedures for Arbitration, agreed to by The Singer Company, The Tappan Company and Haskins & Sells, the arbitrator, in the matter of the arbitration between The Singer Company and The Tappan Company, we hereby advise you that we have determined that The Singer Company is barred from enforcing the arbitration provisions of Section 2.2 of the Agreement to Purchase, dated February 25, 1972 between The Singer Company and The Tappan Company.

By deciding that arbitration was barred the arbitrators left the Closing Balance Sheet in the form it was originally submitted. The agreed upon scope of arbitration did not cover, and thus the arbitrators could not have considered, any defense that Tappan might have to the repayment of the $91,000 overpayment of the price.

Upon receiving Haskins & Sells decision Tappan moved in the district court for an order restoring the order to the active calendar, confirming the award, and "permanently enjoining and restraining [Singer] from commencing or prosecuting any action concerning claims arising from its purchase of the assets of [ECSG], all of which claims were the subject of [Singer's] demand for arbitration herein." In its argument to the district court, and here as well, Tappan has urged that the Haskins & Sells award not only forecloses adjustments to the Closing Balance Sheet, but also forecloses Singer from recovering the $91,000 overpayment due without regard to any adjustments. Singer, on the other hand, argued in the district court, and here as well, (1) that while the Haskins & Sells decision precludes arbitration over adjustments to the Closing Balance Sheet it does not foreclose litigation about those adjustments, and (2) that even if adjustments are foreclosed it may still recover at least the $91,000 overpayment.

The district court order ruled on Tappan's motion as follows:

Ordered that this matter be and it is hereby restored to the active calendar; and it is further

Ordered that the Arbitration Award rendered herein February 22, 1978, be and it is hereby confirmed, and a Final Judgment is hereby entered in favor of The Tappan Company, and against The Singer Comapny [sic] on all claims which were the subject of Singer's prior demand for arbitration herein; and it is further

Ordered that Tappan's motion for an injunction be and it is hereby denied, without prejudice.

Both parties read the order as precluding further litigation over adjustments to the Closing Balance Sheet, and so do we. Singer says that by foreclosing litigation as an alternative to arbitration, the judgment goes beyond the scope of the award. We disagree. The purchase agreement provided in mandatory language that arbitration would be the means of determining wheth-

er adjustments would be made in the Closing Balance Sheet, and we think it more reasonable to read the agreement as establishing arbitration as the exclusive forum for the resolution of these complex accounting disputes. The arbitrator has determined, finally, that Singer is barred through its own fault from resorting to that forum. The final judgment confirming the award therefore properly forecloses future litigation over those adjustments.

■ Tappan urges that the judgment also forecloses any attempt by Singer to recover the $91,000 overpayment. Singer replies that so read the judgment goes beyond the decision of the arbitrators and must be reversed. If Tappan's construction of the judgment were correct we would agree with Singer. But paragraph 9 of the Submission to Arbitration cited above makes it clear that no more was actually submitted to the arbitrators than issues going to adjustments to the Closing Balance Sheet. That Balance Sheet now is determinative of the purchase price. If as a result a $91,000 overpayment has been made repayment of that amount would appear, under the terms of the contract, to have been due 10 days after the Haskins & Sells decision. Whether some other defense might be available to Tappan is a matter not presented on this record. But the arbitration award is not such a defense.

We do not, however, read the judgment as does Tappan. It seems clear to us that the district court intended to and did foreclose litigation over adjustments to the Closing Balance Sheet, and no more. That being the case, the judgment of the district court will be affirmed.