**Ira SHTAB, Plaintiff,**

v.

**THE GREATE BAY HOTEL AND CASINO, INC. t/a Sands Hotel & Casino, and XYZ Corp. (a fictitious entity), Defendant(s).**

No. CIV.A. 00–2122.

United States District Court,
D. New Jersey.

Nov. 13, 2001.

---

William B. Hildebrand, Feldman & Hildebrand, P.C., Cherry Hill, NJ, Attorneys for Plaintiff, Ira Shtab.

Peter L. Frattarelli, Archer & Greiner, A Professional Corporation, Haddonfield, NJ, Attorneys for Defendants, The Greate Bay Hotel and Casino, Inc. t/a Sands Hotel & Casino, and XYZ Corp.

## OPINION

ORLOFSKY, District Judge.

In 1993 Congress enacted the Family and Medical Leave Act to address the serious strains placed on American workers by the ever-increasing demands of the workplace. The Act sought to address problems arising from "the lack of employment policies to accommodate working parents [which] force individuals to choose between job security and parenting" and "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. §§ 2601(a)(3),(4)(2000)("FMLA"). The FMLA envisions a cooperative dialogue between employers and employees through which a balance between their competing needs can be struck. This case, like most litigation arising under the FMLA, results from a breakdown of that hoped-for cooperative dialogue. It presents several questions yet to be addressed by the courts of this Circuit, namely: (1) whether a previous adverse arbitration decision precludes an aggrieved employee from subsequently pursuing his FMLA rights in a federal court; (2) to what extent is an employer obligated to allow an employee to cure a defective FMLA leave application; and, (3) whether a request that an employee modify his leave request in order to accommodate the employer's needs rises to the level of unlawful interference with an employee's rights under the Act.

On May 3, 2000, Plaintiff, Ira Shtab ("Shtab"), filed a Complaint alleging that his employer, The Greate Bay Hotel and Casino, Inc. t/a Sands Hotel & Casino, ("The Sands"), violated provisions of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* Count One of Shtab's Complaint seeks damages under section 107 of the FMLA, 29 U.S.C. § 2617, for what he alleges was the Sands's unlawful discharge of him in violation of the FMLA. Count Two of Shtab's Complaint seeks damages under section 105(a)(1) of the FMLA, 29 U.S.C. § 2615(a)(1), for what he alleges was the Sands's unlawful interference with his rights under the FMLA.

Shtab has moved for summary judgment, pursuant to Fed.R.Civ.P. 56[1], argu-

---

1. The brief filed in support of Shtab's motion is entitled "Brief in Support of Plaintiff's Motion for Partial Summary Judgment," while his Reply Brief is entitled "Plaintiff's Reply Brief in Support of his Motion for Summary Judgment and in Opposition to Defendant's Cross Motion for Summary Judgment." Fed.

R.Civ.P. 56(d) addresses the circumstance in which a motion for summary judgment cannot be rendered upon the whole case, but where the court can make an order specifying the material facts that appear to be without substantial controversy. The appellation "partial summary judgment" is a misnomer

ing that: (1) the Sands violated his rights under the FMLA by denying his leave application based on discrepancies in his doctor's certification without first giving him an opportunity to cure those discrepancies; (2) the Sands further violated Shtab's rights under the FMLA by failing to notify him of the consequences of the mistakes in his medical certification; and, (3) the Sands illegally interfered with his rights under the FMLA by attempting to persuade him to delay his family leave. Shtab additionally argues, in response to the Sands's Cross Motion for Summary Judgment on Count One of the Complaint, that the motion is premature because discovery on the wrongful discharge claim in Count One is not yet complete.

The Sands has filed a Cross Motion for Summary Judgment arguing that: (1) Shtab's claims are precluded by a prior adjudication of identical issues in a labor arbitration; (2) Shtab's medical certification was complete, therefore the Sands was under no obligation to give him an opportunity to cure its defects; and,(3) the Sands's request that Shtab delay his FMLA leave until after the Memorial Day weekend does not rise to the level of unlawful "interference." The Sands argues, in the alternative, that if the Court finds that genuine issues of material fact warrant a denial of its Cross Motion for Summary Judgment, then it should likewise deny Shtab's Motion for Summary Judgment because of inconsistencies in Shtab's factual arguments and legal theories.

For the reasons stated below, the Court shall deny Shtab's Motion for Summary Judgment and the Sands's Cross Motion for Summary Judgment in all respects.

## I. BACKGROUND

Ira Shtab was employed as a cook by the Sands from July, 1993 until February, 1998, when he was laid off because the Paradise Café Restaurant at which he worked was closed. *See* Pl.'s Stmt. of Material Facts at ¶¶ 3, 4; Def.'s Counter Stmt. of Material Facts at ¶ 1. In April, 1998, while he was laid-off, Shtab's three-and-a-half year old son, Matthew Shtab, was diagnosed with autism and Shtab's wife became ill, making Shtab the primary care-giver for his son, who requires constant supervision and care. Pl.'s Stmt. at ¶ 5.

In a letter dated May 15, 1998, the Sands issued a recall notice to Shtab, which requested a response from him within seven days. Pl.'s Stmt. at ¶ 6; Def.'s Counter Stmt. at ¶ 2. There is disagreement as to when Shtab actually received the notice, *see* Pl.'s Stmt. at ¶ 7; Def.'s Counter Stmt. at ¶ 2, however, both parties agree that, in response to the notice, Shtab called the Sands Human Resource Department on May 22, spoke to the Manager of Employee Relations, Amelia Gosbin ("Gosbin"), who informed him that because he was scheduled to work on May 23, the Saturday of Memorial Day weekend, he must report to work to be processed immediately. Pl.'s Stmt. at ¶ 7;

for a Rule 56(d) motion because it "involves an adjudication of less than the entire action, and consequently does not purport to authorize a final and appealable judgment .... an order issued pursuant to Rule 56(d) has no preclusive impact, since the trial court retains jurisdiction to modify the order at any time prior to the entry of a final judgment." 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:*

*Civil 3d* § 2737. Since Shtab's brief does not delineate the proper standard under which this Court is asked to review his motion and because the motion seeks a final judgment in Shtab's favor, rather than the removal of certain uncontroverted facts, I shall treat Shtab's motion as one for summary judgment, pursuant to Rule 56(a), rather than "partial" summary judgment, pursuant to Rule 56(d).

Def.'s Counter Stmt. at ¶ 6. Upon reporting to the Human Resource Department late in the day of May 22, Shtab informed the Benefits Specialist in Charge of Family Leaves, Mary Jo Armond ("Armond"), that he was requesting family leave to begin immediately in order to care for his son. Pl.'s Stmt. at ¶ 8; Def.'s Counter Stmt. at ¶ 7. Upon learning of Shtab's request, Gosbin asked Shtab to delay his leave until after the Memorial Day weekend; Shtab explained that he could not oblige her because he had no one to care for his son while he was at work. Pl.'s Stmt. at ¶ 9; Def.'s Counter Stmt. at ¶ 8.

Armond gave Shtab a Leave of Absence Application form, a doctor's certification form, and the Sands's Employee Responsibilities for Leaves of Absence manual. Shtab completed the Application form, requesting leave to begin the next day, May 23, 1998, and to end June 23, 1998. He returned the form to Armond who advised him that because his leave request was not yet approved, he would have to call in to his department each day to inform the department of his absence. Pl.'s Stmt. at ¶¶ 10, 11; Def.'s Counter Stmt. at ¶¶ 9, 10. The Employees Responsibilities manual outlined the procedures for requesting a leave of absence, specified the need for medical certification, and warned that "[f]ailure to comply with procedures may be considered an unauthorized leave of absence and may result in disciplinary action up to and including termination." The Leave of Absence Application contained similar information and warnings. Def.'s Counter Stmt. at ¶¶ 10–12.

Shtab did not report to work on May 23, 24, or 25, but called in to his department each day, as instructed by Armond. Pl.'s Stmt. at ¶ 13; Def.'s Counter Stmt. at ¶ 17. Shtab gave the medical certification from Dr. David Burgess, his son's physician, to Amador on May 28. Pl.'s Stmt. at ¶ 14;

Def.'s Counter Stmt. at ¶¶ 18, 19. The certification provided for intermittent leave to begin on May 28 and continue until September, 1998 and noted that additional evaluations were possible. Def.'s Counter Stmt. at ¶ 20. Because the medical certification did not explain Shtab's absences over the Memorial Day weekend, the Sands denied Shtab's request for leave and terminated him, effective June 3. Pl.'s Stmt. at ¶ 14, 15; Def.'s Counter Stmt. at ¶¶ 21–23. Shtab maintains that the Sands never informed him of the precise nature of the discrepancies between the certification and his leave application. Pl.'s Stmt. at ¶ 17. Shtab was not given an opportunity to correct the certification's problems. Pl.'s Stmt. at ¶ 17; Def.'s Counter Stmt. at ¶ 22.

Following his termination, Shtab submitted additional medical certifications from Dr. Burgess. The parties disagree about the number of certifications which were submitted. The Sands maintains that Shtab submitted three letters which contained contradictory information, Def.'s Counter Stmt. at ¶ 24; Shtab contends that on June 16, 1998, his union representative faxed the Sands a letter from Dr. Burgess which recommended continuous leave from May 23 to September 14, 1998, Pl.'s Stmt. at ¶ 22. The Sands refused to reconsider Shtab's termination based on the new information contained in the subsequent certification(s). Pl.'s Stmt. at ¶ 23.

Shtab filed four grievances with his Union, which alleged: (1) Improper termination (Grievance No. 98–147); (2) Improper recall from lay-off (Grievance No. 98–148); (3) Improper denial of FMLA leave request (Grievance No. 98–149); and, (4) Improper denial of FMLA and untimely notice (Grievance No. 98–150). Def.'s Counter Stmt. at ¶ 26. Those grievances proceeded to binding arbitration on June

26, 2000, before Arbitrator Ralph Colflesh, Esq., who determined that Shtab's termination was proper. Def.'s Counter Stmt. at ¶¶ 27–32. Shtab maintains that his FMLA grievances were never arbitrated and that the subject of the arbitration was purely contractual in nature. Pl.'s CounterStatement of Material Facts at ¶ 1.

I have jurisdiction over Shtab's claims under the FMLA, pursuant to 28 U.S.C. § 1331.

## II. STANDARD FOR SUMMARY JUDGMENT

"On a motion for summary judgment, the court must determine whether the evidence shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999) (citing Fed.R.Civ.P. 56(c)). "Any factual dispute invoked by the nonmoving party to resist summary judgment must be both material in the sense of bearing on an essential element of the plaintiff's claim and genuine in the sense that a reasonable jury could find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "In opposing summary judgment, a party 'must do more than simply show that there is some metaphysical doubt as to material facts,' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but a court should not prevent a case from reaching a jury simply because the court favors one of several reasonable views of the evidence." *Abraham*, 183 F.3d at 287. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *see also Abraham*, 183 F.3d at 287. "Thus, while the nonmoving party must present enough evidence to demonstrate a dispute is genuine, all inferences in interpreting the evidence presented by the parties should be drawn in favor of the nonmoving party." *Abraham*, 183 F.3d at 287 (citing *Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir.1998)). "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment." *Id.*

If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir.1990) (quoting *Jaroma v. Massey*, 873 F.2d 17, 21 (1st Cir.1989)). Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate." Fed. R.Civ.P. 56(e); *see Anchorage Assocs.*, 922 F.2d at 175. Rule 56(e) of the Federal Rules of Civil Procedure requires that the case be evaluated on its merits, with summary judgment being granted for the movant only if they are entitled to a judgment as a matter of law. *See Anchorage Assocs.*, 922 F.2d at 175.

## III. DISCUSSION

### A. Preclusive Effect of the Adverse Arbitration Decision

The Sands argues that because the factual issues concerning Shtab's FMLA leave were decided against him in an arbitration hearing before Ralph H. Colflesh, Esq., an American Arbitration Association arbitrator on June 26, 2000, the Arbitrator's findings are to be accorded preclusive effect in this lawsuit. The Sands argues further that if the facts must be accepted

by this Court as Arbitrator Colflesh found them, then Shtab's arguments fail as a matter of law.

■ Issue preclusion "prevents relitigation of a particular fact or legal issue that was litigated in an earlier action." *See Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir.1999)(citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322–326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). The doctrine of issue preclusion may be applied where: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir.1992); *Gruntal v. Steinberg*, 854 F.Supp. 324, 336 (D.N.J.1994).

■ The party seeking to invoke the doctrine of issue preclusion bears the burden of demonstrating what was determined in the prior adjudication, *see Gruntal*, 854 F.Supp. at 337 (citing *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir.1992)), and "[r]easonable doubts as to what was decided by a prior judgment should be resolved against using it as estoppel." *Id.* (quoting *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.1970)).

■ The doctrine of issue preclusion applies to issues resolved in arbitration proceedings. *Seborowski*, 188 F.3d at 169; *Gruntal*, 854 F.Supp. at 337. Because arbitrations are not conducted in courts of law and arbitrators are not bound by the same rules of evidence and procedure that judges are, "courts must be cautious of procedural variances between arbitral proceedings and judicial proceedings when deciding whether to give preclusive effect to the former." *Gruntal*, 854 F.Supp. at 337 (citing *Universal American Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir.1991)). Accordingly, "issue preclusion based on a prior arbitration is permissible but not mandatory." *Osuala v. Community College of Philadelphia*, No. Civ. A. 00–98, 2000 WL 1146623, at *5 (E.D.Pa. Aug.15, 2000)(quoting *Giles v. City of New York*, 41 F.Supp.2d 308, 313 (S.D.N.Y. 1999)). An arbitration award is not considered "final" for purposes of issue preclusion absent judicial confirmation of the award, *Gruntal*, 854 F.Supp. at 337, and, for this reason, unconfirmed arbitral awards have been denied preclusive effect in subsequent litigations, *see e.g., Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 385 (2d Cir.1989); *Singer Co. v. Tappan Co.*, 593 F.2d 545, 549 (3d Cir.1979); *Gruntal*, 854 F.Supp. at 338–39; *Scott v. Snelling and Snelling, Inc.*, 732 F.Supp. 1034, 1039 (N.D.Cal.1990).

The Supreme Court has held, in other contexts, that adverse arbitral decisions do not necessarily preclude an employee's subsequent litigation of his federal statutory claims in a judicial forum. *See e.g., McDonald v. City of West Branch*, 466 U.S. 284, 292, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)(discharged police officer was not precluded by adverse arbitration decision from pursuing his § 1983 claims in federal court); *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)(Fair Labor Standards Act); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)(Title VII). The Supreme Court based its decisions on several factors. First, the expertise an arbitrator brings to the resolution of claims "pertains primarily to the law of the shop, not the law of the land." *McDonald*, 466 U.S. at 290, 104 S.Ct. 1799; *Gardner–Denver*, 415

U.S. at 57, 94 S.Ct. 1011. Second, in a dispute over provisions in a collective bargaining agreement, "the union has exclusive control over the 'manner and extent to which an individual grievance is presented.'" *McDonald*, 466 U.S. at 291, 104 S.Ct. 1799; *Gardner–Denver*, 415 U.S. at 58 n.19, 94 S.Ct. 1011. Thus, the union may make different strategic choices or present some claims less vigorously than would the employee. *McDonald*, 466 U.S. at 291, 104 S.Ct. 1799; *Gardner–Denver*, 415 U.S. at 58, 94 S.Ct. 1011. Finally, "arbitral fact-finding is generally not equivalent to judicial factfinding," thus "according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights." *McDonald*, 466 U.S. at 292, 104 S.Ct. 1799. Although the Supreme Court has not addressed the preclusive effect of an adverse arbitration opinion on the rights bestowed by the FMLA, the United States District Court for the Southern District of New York has considered the issue. *See Slaughter v. American Building Maintenance Co.*, 64 F.Supp.2d 319, 330–31 (S.D.N.Y.1999)(arbitrator's decision that employee's termination was justified under the collective bargaining agreement did not collaterally estop employee from bringing FMLA claim because the issues addressed in each were distinct and the notice requirements under the agreement and the FMLA were different).

■ I find the reasoning of *Gardner–Denver* and its progeny to be persuasive in this case. First, the issue to be determined by Arbitrator Colflesh was: "Did the seniority of the Grievant, Ira Shtab, break because he failed to respond to a recall from layoff pursuant to Article III, Section 8, Subsection (C) of the Agreement?" *See Sands Hotel and Casino v. Hotel Employees & Restaurant Employees International Union, Local 54, AFL–*

*CIO*, Case No. 14 300 01248 98A, at 6 (Sept.2000) (Colflesh, Arb.) ("Arbitration Opinion"), and as such was confined to the arbitrator's expertise in matters concerning the collective bargaining agreement. However, in order to decide the contractual claim, Arbitrator Colflesh found it necessary to look into the merits of Shtab's FMLA claim, *see* Arbitration Opinion at 17, although the Union contended that "the Arbitrator should not even deal with the [FMLA] issue since the FMLA application would only be relevant if Sands were able to overcome each of [the Union's other contractual] arguments," *see* Brief for Union at 14, *H.E.R.E. Local 54 v. Sands Casino Hotel*, Case No. 14 300 01248 98A. Thus, it is reasonable to conclude that the expertise which qualified Arbitrator Colflesh to decide the issues governed by the collective bargaining agreement did not extend to the determination of Shtab's federal statutory rights under the FMLA. Second, Shtab was not a party to the arbitration and was not represented by counsel. *See* Hildebrand Aff. ¶ 4. Although Shtab's interests were presumably represented by the Union, it is possible that the Union made different strategic choices or argued certain claims less vigorously than Shtab would have, had he been a party to the arbitration. *See McDonald*, 466 U.S. at 291, 104 S.Ct. 1799; *Gardner–Denver*, 415 U.S. at 58, 94 S.Ct. 1011.

Third, significant issues involved in this litigation, specifically, whether the medical certification that Shtab submitted was "incomplete" and what responsibility the Sands's had under the FMLA to afford Shtab an opportunity to cure the medical certification, were not addressed in the arbitration.

Finally, although the Sands argues that neither Shtab nor his Union appealed Arbitrator Colflesh's opinion, the Sands has

not produced any evidence that the arbitration decision was ever judicially confirmed. Thus, on the record before me, I am unable to conclude that the arbitration decision should be afforded "final effect" for purposes of issue preclusion.

Accordingly, I conclude that the arbitration award should not be given preclusive effect in this litigation. I now proceed to address whether genuine issues of material facts exist as to Shtab's FMLA claims.

## B. The FMLA Claims

The Family and Medical Leave Act was enacted by Congress in 1993 "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1). The Act was designed to accomplish the dual goals of "entitl[ing] employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition[2]" and "accomodat[ing] the legitimate interests of employers." 29 U.S.C. §§ 2601(b)(1),(2). The Family and Medical Leave Act entitles eligible employees[3] to twelve unpaid workweeks of leave during "any 12 month period." 29 U.S.C. § 2612(a)(1).

"In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee." 29 C.F.R. § 825.208(a). The employee is required to provide his employer with enough information for the employer to determine that the leave qualifies under the Act. 29 C.F.R. § 825.208(a)(1). "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected [ground for FMLA leave]. The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought." 29 C.F.R. § 825.302(c); *Price v. City of Fort Wayne*, 117 F.3d 1022, 1025–26 (7th Cir.1997)(leave request that specified medical need and attached a doctor's note was sufficient FMLA notice in spite of fact that employee requested paid leave only); *Wilson v. Lemington Home for the Aged*, 159 F.Supp.2d 186, 191–92 (W.D.Pa.2001)(employee's phone call to supervisor that she was taking personal leave because she was suffering chest pains, was vomiting and had diarrhea was sufficient notice under FMLA).

Leave may be "forseeable" or "unforseeable" under the FMLA. If leave is forseeable, an employee is required to give his employer 30 days' advance notice or if 30 days' notice is impossible under the circumstances, then notice is required "as soon as practicable." 29 U.S.C. § 2612(e)(1); 29 C.F.R. § 825.302. The notice required for unforseeable leave is within one or two days of learning of the need for leave, except in cases where extraordinary circumstances prevent such notice. 29 C.F.R. § 825.303.

---

**2.** The Act defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves: (A) inpatient care in a hospital, hospice, or residential medical care facility; or (b) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The parties do not contest the fact that Shtab's son suffers from a serious health condition as defined by the FMLA.

**3.** The Act defines eligible employees as those who have been employed for at least 12 months by the employer and for at least 1,250 hours during the previous 12–month period. 29 U.S.C. § 2611(A). The parties do not contest that Shtab is an eligible employee as defined by the FMLA.

In order to safeguard the interests of employers and prevent abuses by employees, *see* H.R.Rep. No. 103, at 39 (1993); S.Rep. No. 103–3, at 27–28 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, Congress included a provision in the FMLA which entitles employers to request medical certification from an employee requesting leave. 29 U.S.C. § 2613(a). When an employer requests medical certification, it must provide the employee with notice of the consequences of failing to provide the certification. 29 C.F.R. § 825.301(b)(1)(ii). A certification is considered sufficient if it contains: (1) the date on which the serious health condition began; (2) the probable duration of the condition; (3) the medical facts within the knowledge of the health care provider regarding the condition; and (4) if the leave is for the purpose of caring for a family member, an estimate of the amount of time that the employee will be needed to care for the family member. 29 U.S.C. § 2613(b). "The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d); *Marrero v. Camden County Board of Social Services,* 164 F.Supp.2d 455, 466 (D.N.J.2001)("termination is not an appropriate response for [sic] an inadequate certification. Section 825.305(d) provides that where an employer finds a certification incomplete, it must give the employee a reasonable opportunity to cure any deficiencies"); *Sims v. Alameda–Contra Costa Transit Dist.,* 2 F.Supp.2d 1253, 1268 (N.D.Cal.1998).

The Act provides further protection for employers who doubt the veracity of an employee's leave request. The employer may require, at its own expense, that the employee obtain the opinion of a second health provider chosen or approved by the employer concerning any of the information, *i.e.,* the date of commencement, the probable duration, or the medical facts, in the certification. 29 U.S.C. § 2613(c); 29 C.F.R. § 825.307(2). If the second opinion does not assuage the employer's suspicions, then the employer may require a third opinion which will be considered final. 29 U.S.C. § 2613(d); 29 C.F.R. § 825.307(2)(c). If the employee submits a complete certification signed by the health care provider, a health care provider representing the employer may contact the employee's health care provider, with the employee's permission, in order to clarify and authenticate the certification. 29 C.F.R. § 825.307(a)(1).

### 1. Count One—Wrongful Discharge

#### a. Opportunity to Correct

Shtab alleges that the Sands violated the FMLA by denying his application for FMLA leave and then discharging him for unexcused absence from work. Shtab contends that the Sands failed to give him an opportunity to cure whatever defect existed in his medical certification and to inform him of the consequences of the errors in his medical certification, in violation of the FMLA.

The Sands argues that it was under no obligation to give Shtab an opportunity to correct his medical certification because this duty applies only to incomplete certifications. The Sands contends that Shtab's certification was complete and that because it did not cover Shtab's absences over the Memorial Day weekend, those absences were unexcused, and thus, his dismissal was justified. The Sands also argues that it provided sufficient notice to Shtab of the consequences for inadequate medical certification through its company policies and forms.

In support of his position, Shtab points to 29 C.F.R. § 825.305(d) which requires an employer to give an employee a reason-

able opportunity to cure an insufficient medical certification and to a decision by the United States District Court for the Northern District of California which held that an employer could not use a two-day insufficiency in the employee's medical certification as a ground for discipline where it had not first given the employee an opportunity to cure the deficiency. *See Sims*, 2 F.Supp.2d at 1266–68. Shtab has submitted an affidavit from David Burgess, M.D., the healthcare provider who signed Shtab's medical certifications. Dr. Burgess attests that when he initially filled out the certification he did not realize that Shtab needed a certification covering his absence over the Memorial Day weekend and if he had, he would have approved his absence from work for those dates as well. Burgess Aff. at ¶ 2.

Shtab also argues that the deposition testimony of Ms. Amador demonstrates that the Sands had an established policy and practice of notifying employees of potential problems with their medical certifications and giving them an opportunity to correct them which they violated in his case. *See* Amador Dep. at 21–22 (Answer: "Usually if the person comes in and the dates don't coincide, . . . We let the employee know that the dates aren't coinciding." Question: "Do you give them an opportunity to correct it?" Answer: "Yes."). Kara Hill, the Sands Manager of Compensation and Benefits, acknowledged that although she "let him know that the information [in the certification] was inconsistent" she did not "specifically ·tell [Shtab] to get different documentation to support the leave." Hill Dep. at 51–52.

In response, the Sands argues that an employer's duty to give an employee the opportunity to correct a medical certification does not exist when "the medical certification is complete and adequate for the employer to evaluate the leave request."

Def.'s Br. at 22. The Sands contends that it:

> did not question the validity of Dr. Burgess' conclusions and his diagnosis that plaintiff's son had autism. No second opinion was needed. No clarification or addition of missing information was required. Rather, the Sands reviewed the Burgess DOL form, found it to be complete and unambiguous, and determined that the DOL Form did not support Shtab's absence.

*Id.* at 23. Because it did not find Shtab's medical certification to be "incomplete," the Sands argues, it had no duty under the FMLA or its own practice or procedures to give him an opportunity to correct any deficiencies it contained.

█ The Court agrees with the Sands that a literal reading of 29 C.F.R. § 825.305(d) suggests that an employer is only obligated to give an employee an opportunity to cure defects in a certification if it find that certification to be "incomplete." However, the predicate question of whether the missing dates in Shtab's medical certification rendered his application complete but unsupportive of Shtab's leave request or incomplete and capable of correction is a question of material fact for a jury to decide. I note in passing, however, that the Sands's summary dismissal of Shtab's application is in stark contrast to the type of "interactive dialogue" in which most employers engage with their employees who request FMLA leave. *See Zawadowicz v. CVS Corp.*, 99 F.Supp.2d 518 (D.N.J.2000)(employee terminated only after employer gave her a written warning, a list of the dates for which medical certification was needed, met with her to discuss medical certification, extended the deadline for responding twice, left a phone message, and faxed a memorandum explaining the inadequacies of the certification provided).

### b. Notice of Consequences for Inadequate Certification

Shtab argues that the Sands failed to provide adequate notice as to the consequences for filing an inadequate medical certification. The Sands counters that its Employee Responsibility Form fulfills its notice obligations under 29 C.F.R. 825.301(b)(1).

The Sands's "Leave of Absence Application Form" which Shtab signed upon his application for leave on May 22, 1998 states that the employee's signature signifies an understanding that "[a]bsence without an approval application can be construed as a voluntary termination of [his] employment" and a verification that he "understands the Sands Leave of Absence Policy and [his] right under the leave for which [he] has applied." *See* Hildebrand Aff. at Ex. D. The Sands's "Employee Responsibilities for Leaves of Absence" to which the Leave of Absence Application Form refers contains the following language:

> If the leave is a medical or family leave, the Employee must submit a note from a medical doctor with the application form which includes the following information:
>
> a.  A diagnosis and prognosis;
> b.  The date the disability began; and
> c.  An estimated date of return.
>
> .     .     .     .     .
>
> I have read the above responsibilities and by signing this document understand my obligations under the Sands Leave of Absence Policy. Failure to comply with procedures may be considered an unauthorized leave of absence and may result in disciplinary action up to and including termination.

Hildebrand Aff. at Ex. E.

In support of his argument that this language which focuses on "procedures" did not constitute an adequate warning of the consequences of submitting an inadequate medical certification, Shtab points to the testimony of Michelle Amador, and statements in the Sands's Leave of Absence Policy. Ms. Amador testified that the only paperwork requirements Shtab needed to fulfill in order to qualify for family leave were to submit the written application, sign the employee responsibility form, and submit the doctor's certification. Amador Aff. at 11. The Sands's Leave of Absence Policy states:

> If the leave is not approved:
>
> A.  If the leave must be denied, the department and the employee will be notified in writing as to the reason(s).
>
> B.  If additional information is needed, Benefits contacts the employee who must then provide the additional data if the leave is to be reconsidered.

Hildebrand Aff. at Ex. L.

Although the language of the Sands's Leave of Absence form is clear as to what consequences can result from failing to follow procedures, the evidence to which Shtab refers raises questions of fact as to whether an employee reading the notices on the Leave of Absence form would conclude that an insufficient medical certification would result in immediate termination or would merely result in being asked to "provide additional data" so that the leave request could be reconsidered as the Leave of Absence Policy and Ms. Amador's testimony suggest.

■  Because I conclude that a number of genuine issues of material fact exist as to whether Shtab's medical certification was "incomplete" so as to require the Sands to give him an opportunity to correct it, and as to whether the Sands's warnings about the consequences of filing an inadequate application were sufficient under the FMLA, both Shtab's and the

Sands's Motions for Summary Judgment on Count One shall be denied.

Furthermore, because I have concluded that the Sands is not entitled to summary judgment at this stage in the proceedings, I find it unnecessary to address Shtab's argument that the Sands's motion is premature because discovery has not yet been completed.

### 2. Count Two—Interference with Rights Under the FMLA

29 U.S.C. § 2615(a)(1) makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right [under the FMLA]." 29 C.F.R. § 825.220(b) defines "interference" as including " not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA."

Shtab does not base his § 2615(a)(1) claim upon an allegation that the Sands unlawfully *retaliated* against him for exercising his rights under the FMLA by firing him, as most § 2615(a)(1) claims do, *see e.g., Marrero*, 164 F.Supp.2d at 462; *Lemington Home for the Aged*, 159 F.Supp.2d at 194; *Lapham v. Vanguard Cellular Systems*, Inc., 102 F.Supp.2d 266, 267 (M.D.Pa.2000). Rather, Shtab argues that the Sands interfered with his intent to exercise his rights under the FMLA by trying to persuade him to delay his leave until after the Memorial Day weekend.

The only case within the Third Circuit to deal squarely with the issue of whether it is interference as defined by the FMLA for an employer to suggest that an employee take different dates of leave in order to accommodate the employer has concluded that such a request can constitute interference. *See Williams v. Shenango, Inc.*, 986 F.Supp. 309, 320–21 (W.D.Pa.

1997) (employer's motion for summary judgment denied where "[r]easonable persons could conclude that the initial denial of leave and the suggestion of rescheduling leave may, in fact, constitute 'interference with' FMLA rights"). The Sands argues that an employee must actually suffer some adverse employment action directly due to the alleged interference before he can maintain an action under § 2615(a)(1). In support of this argument, the Sands relies on three cases from other circuits, two of which are unreported and none of which are controlling authority in this Court. *See Schober v. SMC Pneumatics, Inc.*, 2000 WL 1911684, at *5 (S.D.Ind. Dec.4, 2000)(unpublished opinion)(providing incorrect information to an employee concerning FMLA rights can constitute "interference" if the employee forfeited FMLA rights as a result); *Mardis v. Central National Bank & Trust*, 173 F.3d 864, 1999 WL 218903, at *3 (10th Cir. Apr.15, 1999)(unpublished opinion)(telling an employee that she would be deprived of accrued sick leave and annual leave if she took FMLA leave would constitute "interference" but "[m]ere postponement of a scheduled vacation and temporary restriction of use of vacation leave, however, with no ultimate loss of accrued benefits, would likely not constitute actionable discouragement"); *Dodgens v. Kent Manufacturing Co.*, 955 F.Supp. 560, 564–65 (D.S.C.1997)(failure to explain FMLA benefits constituted interference, but it would be "elevating form over substance to permit [plaintiff's] claim to go forward in light of the fact that [he] received all of the leave benefits that he was guaranteed pursuant to the FMLA.").

■ The parties do not disagree that when Shtab first requested FMLA leave, Amelia Gosbin asked him to delay his request until after the Memorial Day weekend. It is also undisputed that after Shtab

**268**

said that he could not put off his leave request he was allowed to apply for leave starting on May 22, the Saturday of Memorial Day weekend. However, reasonable persons could conclude that Gosbin's request "chilled" Shtab's assertion of his rights under the FMLA or could conclude that Shtab's decision to take leave over the Memorial Day weekend contributed to the Sands's ultimate denial of his request. Accordingly, summary judgment on Count Two shall be denied.

## IV. CONCLUSION

For the reasons stated above, Shtab's Motion for Summary Judgment and the Sands's Cross Motion for Summary Judgment shall be denied. The Court shall enter an appropriate form of Order.

### ORDER

This matter having come before the Court on the Motion of Plaintiff for Summary Judgment and Defendant's Cross Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56, William B. Hildebrand, Esq., FELDMAN & HILDEBRAND, P.C., appearing on behalf of Plaintiff, Ira Shtab, and Peter L. Frattarelli, Esq., ARCHER & GREINER, A Professional Corporation, appearing on behalf of Defendant, The Greate Bay Hotel and Casino, Inc. t/a Sands Hotel & Casino; and,

The Court having considered the submissions of the parties; and,

For the reasons set forth in the Opinion filed concurrently with this Order; and,

IT IS, on this 13th day of November, 2001, hereby ORDERED that Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment are DENIED.