**Deborah COOK, Plaintiff,**

v.

**ELECTROLUX HOME PRODUCTS, INC., Defendant.**

**No. C04–3063–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Jan. 26, 2005.

See also 343 F.Supp.2d 747.

IA, Keith L. Pryatel, Thomas Evan Green, Kastner, Westman & Wilkins, LLC, Akron, OH, for Defendant.

Blake Parker, Blake, Parker Law Office, Fort Dodge, IA, for Plaintiff.

James R. Swanger, Belin, Lamson, McCormick, Zumbach, Flynn, Des Moines,

## MEMORANDUM OPINION AND ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION AND BACKGROUND* ................................1005

II. *LEGAL ANALYSIS* .........................................1007
 A. *Standards For Summary Judgment* ....................1007
 B. *The November 17, 2004, Order* .......................1007
 C. *Does The November 17, 2004, Order Have A Preclusive Effect?* ...........1008
 1. *Res judicata* .........................................1009
 a. *The law* ......................................1009
 b. *Arguments of the parties* .......................1011
 c. *Analysis* .....................................1012
 2. *Collateral estoppel* .........................................1020
 a. *The law* ......................................1020
 b. *Arguments of the parties* .......................1020
 c. *Analysis* .....................................1021
 D. *Cook's IWPCL Claim* ................................1023
 1. *Is backpay "wages" under the IWPCL?* .........................1023
 a. *Arguments of the parties* .......................1023
 b. *The law* ......................................1023
 c. *Analysis* .....................................1025

III. *CONCLUSION* .................................................1026

## I. INTRODUCTION AND BACKGROUND

In 1999, plaintiff Deborah Cook ("Cook") became a production employee at defendant Electrolux Home Products, Inc.'s ("Electrolux") washing machine plant in Webster, Iowa. As such, Cook was a member of the Production Workers Union, United Automobile, Aerospace, Agricultural Implement Workers of America, Local 422 ("UAW"). Beginning in 2001, Cook began missing days of work due to a medical condition. Cook was terminated on August 2, 2002, after she failed to provide Electrolux with FMLA certification for her July 31, 2002, absence. Following her termination, Cook obtained, and remitted to Electrolux, FMLA certification from a nurse practitioner, but Electrolux rejected the certification and stood by its decision to fire Cook.

The UAW filed a labor-arbitration grievance on Cook's behalf, seeking resolution of the following issue:

Did the Company have the "just cause" required by Article 16 of the working agreement to terminate the employment of the Grievant, Ms. Deborah Cook? If not, what should the remedy be?

Brief in Support of Plaintiff's Motion for Summary Judgment and in Support of Plaintiff's Resistance to Defendant's Mo-

tion for Summary Judgment ("Plf.'s Brief"), Doc. Nos. 22 & 23, Exh. 1, at 2. An Arbitration Decision dated November 23, 2003, sustained the grievance and ordered the following:

> [Electrolux] is directed to reinstate [Cook] to the position she held immediately prior to her wrongful termination, or its equivalent, and to compensate her with back pay for the loss of wages and other benefits that she suffered as a result of its wrongful action.

*Id.* at 10. In closing, the arbitrator stated: "Jurisdiction is retained to resolve any controversies that may arise with respect to the proper implementation of this Award." *Id.* Though Electrolux complied with the portion of the award requiring reinstatement, it did not pay Cook the backpay for her loss of wages and other benefits.

On July 30, 2004, Cook filed a complaint against her former employer, Electrolux, alleging two causes of action: (1) unlawful discharge in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"); and (2) a claim for unpaid wages, based on Electrolux's failure to pay her the backpay awarded by the arbitrator, under the Iowa Wage Payment Collection Law, Iowa Code ch. 91A, *et seq.* ("IWPCL"). (Doc. No. 2). On August 27, 2004, Electrolux filed a Motion to Dismiss Count II, alleging that the backpay sought by Cook was not "wages" under the IWPCL, and alternatively that the IWPCL claim was preempted by the federal Labor–Management Relations Act, 29 U.S.C. § 185, *et seq.* (Doc. No. 6). Cook filed a Resistance to Defendant's Motion to Dismiss Count II and Request for Oral Argument on September 10, 2004. (Doc. No. 10). On September 16, 2004, Cook filed an uncontested Motion to Convert Defendant's Rule 12(b)(6) Motion to Dismiss to a Motion for Summary Judgment. (Doc. No. 12). In this motion, Cook asserted that the underlying facts were not contested, that the motion could more properly be decided under summary judgment standards, and that Electrolux did not contest conversion. On September 16, 2004, Magistrate Judge Paul A. Zoss granted Cook's motion to convert Electrolux's motion to one for partial summary judgment and ordered the parties to file a joint appendix. (Doc. No. 13). On October 1, 2004, the parties filed a Joint Appendix as directed. (Doc. No. 14).

Telephonic oral arguments on the motion for partial summary judgment were held on November 19, 2004. At oral argument, Cook was represented by Blake Parker of the Blake Parker Law Office in Fort Dodge, Iowa. Electrolux was represented by Keith L. Pryatel of Kastner, Westman & Wilkins in Akron, Ohio. At oral argument, Electrolux indicated that in light of the court's recent decision in *Electrolux Home Products, Inc. v. The United Automobile, Aerospace and Agricultural Implement Workers of America, et al.,* C04–3005–MWB, Memorandum Opinion and Order Regarding Cross–Motions For Summary Judgment ("November 17, 2004, Order"), it would request additional time to brief and submit the issue of whether principles of *res judicata* barred the plaintiffs claims in this case. At that time the court indicated that while it would not entertain further oral argument, it would allow Electrolux the opportunity to brief the issue of *res judicata* and instituted an abbreviated briefing schedule on the matter.

On December 2, 2004, Electrolux filed a Motion for Summary Judgment Based Upon *Res Judicata* which asserted that *res judicata* precluded Cook's claims. (Doc. No. 20). On December 18, 2004, Cook filed a Motion for Summary Judgment in which she claimed entitlement to partial summary judgment on her FMLA claim due to the issue preclusive effect of

this court's November 17, 2004, Order, upholding the arbitrator's decision. In support of her motion, and in resistance to Electrolux's motion for summary judgment, Cook filed a combined Brief in Support of Plaintiff's Motion for Summary Judgment and in Support of Plaintiff's Resistance to Defendant's Motion for Summary Judgment ("Plf.'s Combined Brief"). (Doc. No. 22). On December 20, 2004, Cook filed her Resistance to Defendant's Motion for Summary Judgment Based Upon *Res Judicata*, and attached the aforementioned combined brief in support. (Doc. No. 23). On December 27, 2004, Electrolux filed its Reply Memorandum in Support of Its Motion for Summary Judgment Based Upon *Res Judicata* and Resistance to Plaintiff's Cross–Motion for Summary Judgment ("Deft.'s Combined Brief"). (Doc. No. 24). On December 30, 2004, Cook filed her Reply to the Defendant's Resistance to Plaintiff's Cross–Motion for Summary Judgment. (Doc. No. 25). A bench trial in this case is currently set for December 19, 2005. The matter is now fully submitted and ready for a determination by this court.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that either the claimant or the defending party may move for summary judgment in its favor on all or any part of a claim. *See* FED. R. CIV. P. 56(a) & (b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A case in which the issues involved are primarily questions of law, which the parties contend is the case here, "is particu-

larly appropriate for summary judgment." *TeamBank, N.A. v. McClure,* 279 F.3d 614, 617 (8th Cir.2002) (citing *Adams v. Boy Scouts of America–Chickasaw Council,* 271 F.3d 769, 775 (8th Cir.2001)); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Shirley,* 96 F.3d 1108, 1111 (8th Cir.1996) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1315 (8th Cir.1996) (same). In this instance, both parties contend that they are entitled to summary judgment in their favor in light of this court's November 17, 2004, Order in *Electrolux Home Products, Inc. v. The United Automobile, Aerospace and Agricultural Implement Workers of America, et al.,* C04–3005–MWB, ("*Electrolux I*") therefore the court will first discuss the details behind the issuance of the order prior to consideration of the parties' arguments under the previously delineated summary judgment standards.

### B. The November 17, 2004, Order

In *Electrolux v. The United Automobile, Aerospace and Agricultural Implement Workers of America, et al.,* 343 F.Supp.2d 747 (N.D.Iowa 2004) ("*Electrolux I*"), by virtue of her position with Electrolux, Deborah Cook was a member of The United Automobile, Aerospace and Agricultural Implement Workers of America and the United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 442 (collectively "UAW" unless otherwise indicated). Cook was discharged by Electrolux on August 7, 2004, and the UAW subsequently filed a grievance on her behalf contesting her termination for violation of the attendance policy. In this instance, the collective-bargaining agreement in controversy incorporated an attendance policy which

allots eight banked attendance points to each worker. Employees who exhaust their allotment of eight banked attendance points are subject to termination of their employment with Electrolux. The Attendance policy provides that zero points are removed if the leave qualifies as FMLA leave. The Attendance Policy also states in pertinent part:

> Any absences of Sickness and Accident leave which do not qualify for FMLA (Family Medical Leave act) and are less than 10 working days = 1 [removed attendance] point.

Compl. ¶ 9; Answer ¶ 9.

*Id.* at 750. Additionally, the collective-bargaining agreement provided for Electrolux to establish and publish a Family and Medical Leave of Absence Policy consistent with the provisions of the Family and Medical Leave Act of 1993—which Electrolux did so publish and enforce. *Id.* The UAW did not dispute any of Cook's absences that reduced her total to one, but rather only argued that Cook should not have lost a point for leaving early on July 31, 2002, as that absence should have been counted as FMLA leave. The grievance was arbitrated, and ultimately an Arbitration Decision was rendered in the UAW's favor on November 23, 2003. Specifically, the arbitration award found that as the July 31, 2002, absence should have counted as FMLA leave, Cook was not terminated for "just cause" as required by the collective-bargaining agreement and directed Electrolux to reinstate Cook to her former position and compensate her with backpay.

On January 15, 2003, Electrolux brought suit against the UAW seeking vacation of the arbitration award on several grounds: (1) the award did not draw its essence from the collective bargaining agreement; (2) the award was contradicted by the language of the collective bargaining agreement; (3) the award could not be rationally derived from the terms of the collective bargaining agreement; (4) the arbitrator's opinion and award were in manifest disregard of the law; and (5) substantial evidence in the record did not support the arbitrator's opinion and award. *Id.* at 749. The UAW filed an answer and counterclaim seeking enforcement of the challenged arbitration award, attorneys' fees and costs, and an award to Cook to make her whole for any losses incurred as a result of Electrolux's failure to comply with the arbitration award. *Id.* The matter came before this court for decision when the parties filed cross-motions for summary judgment, each seeking judgment as a matter of law in their favor.

After reviewing the record, and the arguments of the parties, the court denied Electrolux's motion for summary judgment, and granted in part and denied in part the UAW's motion for summary judgment, as follows:

> Electrolux's Motion For Summary Judgment is denied. The UAW's Motion For Summary Judgment is granted in part in that the court confirms the decision of the arbitrator and orders that Electrolux comply immediately and fully with the decision of the arbitrator. Consistent with the arbitration award, Electrolux is ordered to pay [Cook] back pay for lost wages and benefits from August 2, 2002, through December 5, 2003. The UAW's request for summary judgment on its claim for attorneys' fees incurred in defending this action is denied. Judgment shall enter accordingly.

*Id.* at 762.

### C. Does The November 17, 2004, Order Have A Preclusive Effect?

 Before delving into the substance of the issue at hand, it is important to first briefly review the nomenclature most commonly used (and *mis*used) in discussing the preclusive effect of a prior judgment.

Collateral estoppel, or issue preclusion, is a doctrine that bars relitigation of an issue identical to the issue actually litigated in the previous action. *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 939 (8th Cir.2000); *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir.1990), *cert. denied*, 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). On the other hand, *res judicata*, or claim preclusion, bars litigation of claims that were litigated, or could have been litigated, in the previous action. *Popp*, 210 F.3d at 940 n. 13. In this matter, Electrolux couches its argument for summary judgment on principles of *res judicata*, whereas Cook asserts entitlement to summary judgment on her FMLA claim on the basis of collateral estoppel. Therefore, the court will examine each concept in turn by first setting forth the law behind the application of the preclusion principle, followed by the arguments of the parties and an analysis of the issues at hand.

### 1. Res judicata

#### a. The law

 Claim preclusion " 'bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.' " *Plough v. West Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 517 (8th Cir.1995) (quoting *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir.1984)); *see also U.S. v. Gurley*, 43 F.3d 1188, 1195 (8th Cir.1994) (" 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' ") (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). "Thus, *res judicata* precludes the relitigation of a claim on grounds that *were* raised or *could have been* raised in the prior action." *Lane*, 899 F.2d at 741 (emphasis added) (citing *Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir.1982)), *cert. de-*

*nied.*, 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990); *see Roach v. Teamsters Local Union No. 688*, 595 F.2d 446, 450 (8th Cir.1979) ("A judgment in a prior suit between the same parties is final not only as to all matters that were in fact offered and received to sustain or defeat the claim but also as to all matters that might have been offered for that purpose.")

 "[I]t is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum." *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir.2002) (citation and internal quotation marks omitted); *see Iowa Network Servs., Inc. v. Qwest Corp.*, 363 F.3d 683, 689 (8th Cir.2004) (applying Iowa's *res judicata* law where relevant prior judgment was an Iowa administrative proceeding); *Follette v. Wal–Mart Stores, Inc.*, 41 F.3d 1234, 1237 (8th Cir.1994) (holding that where a federal court sitting in diversity rendered the relevant prior judgment, the preclusive effect of that prior judgment is governed by the "forum which provided the substantive law underlying that prior judgment."); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1012 (8th Cir.1990) (applying federal preclusion principles where relevant prior judgment was the result of a cause of action litigated in federal court). Therefore, as the relevant prior judgment—the November 17, 2004, Order—was issued in federal court, federal *res judicata* law applies. *Canady*, 282 F.3d at 1014; *see NAACP v. Metropolitan Council*, 125 F.3d 1171, 1174 (8th Cir.1997) (holding that "federal law governs *res judicata* effect of an earlier federal judgment"), *cert. granted, judgment vacated and remanded for reconsideration on other grounds*, 522 U.S. 1145, 118 S.Ct. 1162, 140 L.Ed.2d 173 (1998), *on remand*, 144 F.3d 1168 (8th Cir.1998).

The Eighth Circuit Court of Appeals's test for whether the doctrine of *res judicata* bars litigation of a claim requires an examination of whether (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was a final judgment on the merits; and (3) both cases involved the same cause of action and the same parties.[1] *Canady*, 282 F.3d at 1014 (citing *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1044 n. 2 (8th Cir.1997), and *NAACP v. Metropolitan Council*, 125 F.3d 1171, 1174 (8th Cir. 1997)); *see also Wilford Banks v. International Union Electronic, Electrical, Technical, Salaried and Machine Workers*, 390 F.3d 1049, 1052 (8th Cir.2004); *Gurley v. Hunt*, 287 F.3d 728, 731 (8th Cir.2002); *Lane*, 899 F.2d at 742; *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir.1989); *Headley v. Bacon*, 828 F.2d 1272, 1274 (8th Cir. 1987); *Peda v. Fort Dodge Animal Health, Inc.*, 293 F.Supp.2d 973, 983 (N.D.Iowa 2003). "Furthermore, the party against whom *res judicata* is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect." *In re Anderberg–Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir.1997) (citing *Plough*, 70 F.3d at 517). "If the three elements are met, the parties are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Lundquist v. Rice Mem. Hosp.*, 238 F.3d 975, 977 (8th Cir.2001) (quoting *C.I.R. v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948)) (citation omitted); *see Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 802 (8th Cir.1992) ("where a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, *res judicata* will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim."). However, claim preclusion does not apply "to claims that did not exist when the first suit was filed." *Lundquist*, 238 F.3d at 977; *see Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir.2000) ("[i]t is well settled that claim preclusion does not apply to claims that did not arise until after the first suit was filed.").

1. On some occasions, the final element is split into two inquiries, one into whether both suits involved the same cause of action, and another into whether both suits involved the same parties or their privies. *See Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998) (listing the following as the last two elements to consider in determining the preclusive effect of a prior judgment: "(3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."); *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983) (listing same factors, but splitting last factor into the following two considerations: "(3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies."). The Eighth Circuit has also referred to the "same cause of action" requirement as looking into whether the previous judgment and the current litigation arose from the same common nucleus of operative fact. *See Regions Bank v. J.R. Oil Co., L.L.C.*, 387 F.3d 721, 732 (8th Cir.2004) (noting that the Eighth Circuit interprets "the phrase 'the same claims or causes of action' to mean claims that arise out of the same nucleus of operative facts.") *Kolb v. Scherer Bros. Fin. Servs. Co.*, 6 F.3d 542, 544 (8th Cir.1993) (splitting the final factor into the following two factors: "(3) both suits must involve the same nucleus of operative fact; and (4) both suits must involve the same parties or their privies.") (citing *United States v. Green Forest*, 921 F.2d 1394, 1403 (8th Cir.1990)); *Gurley*, 43 F.3d at 1195 ("Whether the present action is the 'same cause of action' as the prior action depends on whether it 'arises out of the same nucleus of operative facts as the prior claim.'") (quoting *Lane*, 899 F.2d at 742).

In her brief in resistance to Electrolux's motion for summary judgment, Cook states that there is no genuine issue of material fact that *Electrolux I* was based on proper jurisdiction and that both suits are based on the same nucleus of operative fact, and that the only remaining *res judicata* considerations—specifically, whether the November 17, 2004, Order was a final judgment on the merits and whether both suits contained the same parties or their privies—are at issue. *See* Plf.'s Brief at 7 (admitting to dispute as to jurisdiction and same claim requirements). However, in her arguments as to why the November 17, 2004, Order did not constitute a final judgment, Cook focuses on reasons which appear to go to why the claims at issue here and those at issue in *Electrolux I* are not the same. Further, there appears to be no legal basis for arguing that the November 17, 2004, Order upholding the arbitration award was not a final judgment on the issues before the court in *Electrolux I*. Therefore, the court will treat Cook's arguments as going towards whether both suits contained the "same claims." In summary, only the final element—whether both suits involved the same cause of action and the same parties—remains disputed.

#### b. Arguments of the parties

Electrolux argues that the Eighth Circuit Court of Appeals has broadly defined "cause of action" in determining whether both suits involve the same nucleus of operative fact—such that whether both suits "involve 'separate and distinct statutory rights' is not determinative." Defendant Electrolux Home Products, Inc.'s Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment Based Upon *Res Judicata*, Doc. No. 20, at 3 ("Deft.'s Brief") (quoting *Roach v. Teamsters*, 595 F.2d 446, 449 (8th Cir. 1979)). Electrolux notes that the Eighth Circuit has adopted a "transactional" approach found in the Restatement (Second) of Judgments in viewing the "same claim" *res judicata* requirement—and that under this approach the termination of a worker is treated as a single transaction. Electrolux argues that even though the claims carry different labels—*Electrolux I* dealing with interpretation of the collective-bargaining agreement and this suit dealing with Cook's FMLA and IWPCL claims— as *res judicata* bars not only claims that were brought, but those that could have been brought, Cook's claims here are barred by *res judicata* as they arise from the same nucleus of operative fact and involve the same fundamental legal issue of whether Cook's July 31, 2002, absence from work was FMLA protected. Electrolux also notes that even a party not named in the prior action can be in privity with a party to the prior action. Further, Electrolux contends that union workers are in privity with their representative union, and that, therefore, Cook was in privity with the UAW in *Electrolux I*. Electrolux cites a number of cases purportedly in support of its position that Cook, as a union member, was in privity with the UAW as required for *res judicata* to attach. Electrolux concludes by asserting that all of the requirements have been met and that *res judicata* should attach to bar this suit in its entirety.

Cook proffers two reasons for why her current action and *Electrolux I* did not involve the "same claims" as required for her claims here to be precluded: (1) the issue that was submitted for arbitration was whether Electrolux complied with the terms of the collective-bargaining agreement, whereas this case requires a determination of whether there was a violation of the FMLA; and (2) the November 17, 2004, Order only determined the remedy for breach of the collective-bargaining agreement and did not determine the remedy for Electrolux's violation of the

FMLA. Further, Cook argues that the contractual claim based on the collective-bargaining agreement could not encompass the remedies available to an individual bringing an FMLA claim—specifically, liquidated damages and attorneys' fees. As the November 17, 2004, Order did not precisely address her specific claims in this case, Cook contends that it was not a final judgment on the merits of her FMLA claim—and implicitly that *Electrolux I* did not resolve her legal claims in this action. Cook strenuously resists Electrolux's contention that both suits involved the same parties or their privies. Cook states that although she was a member of the UAW, the collective bargaining agreement did not involve her personally, nor was it an interpretation of her rights. Cook further points out that she was *not* a named party in the *Electrolux I* action, nor was any appearance filed on her behalf (even by the UAW) in *Electrolux I*. Further, although the UAW used Cook's situation as the basis for the labor-arbitration grievance that eventually spawned the November 17, 2004, Order, the only parties involved in *Electrolux I* were Electrolux and the UAW, *not* Cook. Cook recognizes that it is not necessary for a party to be named in the prior suit for *res judicata* "privity" between the parties to exist. However, Cook contends that although she was a member of the bargaining unit represented by the UAW, she was not a party to the collective-bargaining agreement in question in the November 17, 2004, Order, nor could Cook have individually sued Electrolux for a violation of the collective-bargaining agreement. Further, Cook contends that there was nothing about Cook and the UAW's relationship which would have given the UAW the ability to assert an FMLA claim on Cook's behalf. Additionally, Cook argues that as FMLA damages require proof of facts wholly different than those necessary for the UAW's grievance in *Electrolux I,* Cook could not have "fully

and fairly" adjudicated her FMLA claim in *Electrolux I*. Finally, Cook distinguishes the precedent that Electrolux claims stands for the proposition that a union member is in privity with their representative union for *res judicata* purposes.

In reply, Electrolux rejects Cook's argument that the issues or the remedies available in both actions must be identical in order for *res judicata* to attach. Electrolux asserts that whether the two suits involve distinct and separate rights is *not* dispositive, and points to *Baker v. General Motors*, 522 U.S. 222, 238, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998)—Electrolux asserts that *Baker* held *res judicata* to bar a tort-claim based upon an earlier-filed Title VII judgment offering limited relief. With regard to the "same parties or their privies" requirement, Electrolux argues that Cook concedes that she had legal interest in the outcome of *Electrolux I,* and that the FMLA's text makes clear that the UAW could have pursued a FMLA claim on her behalf.

#### c. Analysis

With regard to the "same claim" inquiry, the Eighth Circuit Court of Appeals has noted:

> [T]he phrase "cause of action" or "claim," the term now favored by most courts, has been given a more practical construction. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same "claim" or "cause of action" for purposes of *res judicata.*

*Landscape Properties, Inc. v. Whisenhunt,* 127 F.3d 678, 683 (8th Cir.1997) (quoting *Ruple v. City of Vermillion, S.D.,* 714 F.2d 860, 861 (8th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984)); *see Ruple v. City of Vermillion,*

714 F.2d 860, 861 (8th Cir.1983) (indicating that two suits involve the same claim or cause of action where the "case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as the former action.").

> However, when *res judicata* principles operate to impinge on federal statutory rights, the courts have expressed substantial willingness to safeguard federal claims even when the factual circumstances giving rise to both actions are the same. Thus, when federal rights are directly implicated, the *res judicata* inquiry focuses on the nature of the claims being vindicated.

*Abels v. Titan Intn'l, Inc.*, 85 F.Supp.2d 924, 930–31 (S.D.Iowa 2000). In fact, in other statutory contexts, the United States Supreme Court had held that prior arbitral decisions stemming from collective-bargaining agreements do not preclude subsequent litigation of an individual's federal statutory claims in a judicial forum. In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court held that an employee whose grievance was previously arbitrated pursuant to the collective-bargaining agreement containing prohibitions similar to those found in Title VII was not foreclosed from bringing a Title VII action against his employer that was based on the same conduct as that underlying the grievance:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

*Id.* at 49–50, 94 S.Ct. at 1020. In *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Court extended this analysis to claims under the Fair Labor Standards Act ("FLSA");

> In sum, the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures.

*Id.* at 745, 101 S.Ct. at 1447. Finally, in *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), under the same reasoning applied in *Gardner–Denver* and *Barrentine*, the Court found the doctrines of *res judicata* and collateral estoppel inapplicable in a § 1983 action:

> ... our decisions in *Barrentine* and *Gardner–Denver* compel the conclusion that [arbitration] cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard. As a result, according preclusive effect to an arbitration award in a subsequent § 1983 action would undermine that statute's efficacy in protecting federal rights.... We therefore hold that in a § 1983 action, a federal court should not afford *res judicata* or collateral-estoppel to effect an award in an arbitration proceeding brought pursuant to

the terms of a collective-bargaining agreement.

*Id.* at 291–92, 104 S.Ct. at 1803–04; *accord Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70, 77, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (discussing, without deciding, the issue of whether a union-negotiated waiver of an employee's statutory right to a judicial forum was valid, and ultimately finding that where broad arbitration clause did not specifically incorporate the ADA the employee did not clearly and unmistakably waive their rights to a judicial forum); *Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 564–67, 107 S.Ct. 1410, 1414–16, 94 L.Ed.2d 563 (1987) (finding that though injury was caused by conduct that could be subject to arbitration under the Rail Act this did not preclude plaintiff from bringing Federal Employee's Liability Act claim).

The Supreme Court's holdings in *Gardner–Denver, Barrentine,* and *McDonald,* were predicated on a number of factors. First, an arbitrator's expertise is grounded in "the law of the shop, not the law of the land," and they therefore may not have the specialized knowledge necessary to resolve complex legal questions arising in claims of violation of certain federally protected rights. *Gardner–Denver,* 415 U.S. at 57, 94 S.Ct. at 1025; *see Barrentine,* 450 U.S. at 743, 101 S.Ct. at 1446 (quoting *Gardner–Denver*); *McDonald,* 466 U.S. at 290, 104 S.Ct. at 1803 (quoting *Gardner–Denver*). Second, "[t]he arbitrator has no general authority to invoke public laws that conflict with the bargain of the parties," but rather "has authority to resolve only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by [federal law]." *Id.* at 53–54, 94 S.Ct. at 1022; *see Barrentine,* 450 U.S. at 744, 101 S.Ct. at 1447 (quoting *Gardner–Denver*); *McDonald,* 466 U.S. at 290–91,

104 S.Ct. at 1803 (quoting *Gardner–Denver*). In fact

> [i]f an arbitral decision is based 'solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the submission,' and the award will not be enforced.

*Gardner–Denver,* 415 U.S. at 53, 94 S.Ct. at 1022 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). Third, there are many differences between arbitral factfinding and judicial factfinding—namely in that, "[t]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *Gardner–Denver,* 415 U.S. at 57–58, 94 S.Ct. at 1024. Further, "arbitrators have no obligation to the court to give their reasons for an award." *Id.* at 58, 94 S.Ct. at 1024. Fourth, the union has exclusive control over the "manner and extent to which an individual grievance is presented" and the union's interests and those of the affected employee are not always congruent. *Barrentine,* 450 U.S. at 742, 101 S.Ct. at 1446; *McDonald,* 466 U.S. at 291, 104 S.Ct. at 1803. As such, the union may decide to pursue some claims less vigorously, or make different strategic choices, than the employee would have had they been a part of the arbitration. *Barrentine,* 450 U.S. at 742, 101 S.Ct. at 1445–46; *McDonald,* 466 U.S. at 291, 104 S.Ct. at 1803. Further, "the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit." *Gardner–Denver,* 415 U.S. at 58 n. 19, 94 S.Ct. at 1024 n. 19.

Thus, were an arbitration award accorded preclusive effect, an employee's opportunity to be compensated for a constitutional deprivation might be lost merely because it was not in the union's best interest to press his claim vigorously.

*McDonald,* 466 U.S. at 291, 104 S.Ct. at 1803. Based on these factors the Court ultimately came to the conclusion that "Congress intended [certain federal statutory rights] to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes."[2] *McDonald,* 466 U.S. at 289, 104 S.Ct. at 1802 (citing *Barrentine,* 450 U.S. at 740–46, 101 S.Ct. at 1444–47 and *Gardner–Denver,* 415 U.S. at 56–60, 94 S.Ct. at 1023–25).

The Eighth Circuit has yet to address the application of the *Gardner–Denver* line of cases to the statutory rights created by the FMLA—however, in addition to recognizing the applicability of the *Gardner–Denver* rationale to Title VII cases, *see Banks,* 390 F.3d at 1053 (finding *Alexander* distinguishable from case at hand in which claims in first suit were not based on the grievance-arbitration machinery of a collective-bargaining agreement and prior suit was not based on an arbitration decision); *Bell v. Conopco, Inc.,* 186 F.3d 1099, 1101 (8th Cir.1999) (finding that the district court "correctly followed *Gardner–Denver's* holding that Title VII claims are not barred by arbitration decisions"); *Varner v. National Super Markets, Inc.,* 94 F.3d 1209, 1213 (8th Cir.1996) (finding that the plaintiff was not required to arbitrate before bringing Title VII claim in federal court in spite of language of collective-bargaining agreement, and further that even if plaintiff had pursued arbitration, she would not be precluded from bringing

**2.** In a later case entitled *Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court distinguished *Gardner–Denver, Barrentine,* and *McDonald* from the case at hand. In *Gilmer,* the plaintiff brought suit against his employer alleging that he was discharged in violation of the Age Discrimination in Employment Act (ADEA), and the employer filed a motion to compel arbitration consistent with the collective-bargaining agreement. The question before the Court was whether an ADEA claim "can be subject to compulsory arbitration pursuant to an arbitration agreement in a securities registration application." *Id.* at 23, 111 S.Ct. at 1650. The Court ultimately rejected the plaintiff's argument that the *Gardner–Denver* line of cases applied, and held that they provided no basis for refusing to enforce the plaintiff's agreement to arbitrate his ADEA claim:

There are several important distinctions between the *Gardner–Denver* line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements." *Mitsubishi,* 473 U.S. at 625, 105 S.Ct. at 3353. Therefore, those cases provide no basis for refusing to enforce [the plaintiff's] agreement to arbitrate his ADEA claim.

*Id.* at 35, 111 S.Ct. at 1657. Electrolux does not argue that the plaintiff contractually agreed to arbitrate any statutory claim under the FMLA, therefore the court need not engage in further discussion of *Gilmer* at this time.

those claims subsequently in federal court); *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 27 F.3d 1316, 1326 n. 3 (8th Cir.1994) (taking, in Title VII action, notice of an arbitral finding that plaintiff had been dismissed for just cause under the collective bargaining agreement, but declining to defer to the finding or give it any weight), the Eighth Circuit has also extended the *Gardner–Denver* reasoning to the All Writs Act, 28 U.S.C. § 1651, *In re Y & A Group Securities Litig.,* 38 F.3d 380, 382–83 (8th Cir.1994), and ERISA actions. *American Federation of Television and Radio Artists Health and Retirement Funds v. WCCO Television, Inc.,* 934 F.2d 987, 988–91 (8th Cir.1991); *see Abels,* 85 F.Supp.2d at 930–32 (applying *Gardner–Denver* rational to ERISA claims).

Though the Eighth Circuit has not spoken directly on the issue at hand,[3] a discussion of whether prior arbitration of a grievance pursuant to a collective-bargaining agreement *precludes* an individual from bringing an FMLA claim in a judicial forum was undertaken by the United States District Court for the District of New Jersey in *Shtab v. Greate Bay Hotel and Casino, Inc.,* 173 F.Supp.2d 255 (D.N.J.2001). In *Shtab* the defendant filed a cross-motion for summary judgment in regard to the plaintiff's FMLA claim on the basis of a prior adverse arbitral decision. *Id.* at 260. Specifically, the defendant argued that factual issues surrounding the plaintiff's FMLA leave were previously resolved against the plaintiff in

an arbitration hearing, and therefore *res judicata* should bar the plaintiff from seeking a redetermination of those factual issues via the pursuit of his FMLA claim in a judicial forum. *Id.* at 260–61. After examining the basic principles surrounding issue preclusion, the court, citing the *Gardner–Denver* line of cases, noted that, "[t]he Supreme Court has held, in other contexts, that adverse arbitral decisions do not necessarily preclude an employee's subsequent litigation of his federal statutory claims in a judicial forum." *Id.* The court found the rationale behind the *Gardner–Denver* line of cases applicable to the case at hand, and gave the following reasons for not according the arbitration award a preclusive effect: (1) the issue submitted to the arbitrator was confined to the "arbitrator's expertise in matters concerning the collective bargaining agreement"[4]—though the arbitrator found it necessary to inquire as to the merit's of the plaintiff's FMLA claim in order to decide the contractual issue before him; (2) the plaintiff was not a party to the arbitration and was not represented by counsel—thus creating the possibility that the union made different choices or argued some claims less vigorously than the plaintiff would have had he been a party; (3) significant issues in the litigation, such as whether the FMLA certification was incomplete and what duty the defendant had to allow the plaintiff to cure any defect in the certification, were not addressed in the

3. Though not addressing the specific issue in this case, the United States District Court for the District of Minnesota in *Neppl v. Signature Flight Support Corporation,* 234 F.Supp.2d 1016, (D.Minn.2002), after a thorough analysis of the *Gardner–Denver* line of cases as well as *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) and its progeny holding arbitration of certain federal statutory claims appropriate, ultimately held that an employee subject to a collective-bargaining

agreement containing a general arbitration clause had not waived the right to bring a statutory claim under the FMLA against his employer in federal court. *Neppl,* 234 F.Supp.2d at 1019–25.

4. The question submitted to the arbitrator in *Shtab* was: "Did the seniority of the Grievant, Ira Shtab, break because he failed to respond to a recall layoff pursuant to Article III, Section 8, Subsection (C) of the Agreement?" *Shtab,* 173 F.Supp.2d at 262.

arbitration decision; and (4) no evidence was presented to show that the arbitration decision had ever been judicially confirmed, thereby under applicable precedent preventing the decision from having any preclusive effect. *Id.* at 262–63. Ultimately, the court concluded that the prior arbitration award should not be given any preclusive effect and moved on to consider whether a genuine issue of material fact existed as to the plaintiff's FMLA claim. *Id.* at 263.

■ The FMLA specifically provides for a private cause of action "to recover ... damages or equitable relief ... in any Federal or State court of competent jurisdiction." 29 U.S.C. § 2617(a)(2). Like claims under Title VII, the FLSA, and § 1983, Congress clearly created an individual federal statutory right which it intended to give individual employees the right to bring their FMLA claims in a judicial forum. *See McDonald,* 466 U.S. at 290, 104 S.Ct. at 1803; *Barrentine,* 450 U.S. at 745, 101 S.Ct. at 1447. The court therefore finds the *Gardner–Denver* line of cases, as well as the reasoning of *Shtab,* applicable to this case in which Electrolux attempts to use the November 17, 2004, Order, confirming the arbitration award in *Electrolux I* to preclude Cook's FMLA claim. Comparing this case to that of *Shtab* it is evident that factual differences exist—for example, **unlike** *Shtab,* the arbitrator in this case specifically analyzed whether Cook's July 31, 2002, absence should have been excused as FMLA leave, and in doing so considered: (1) whether the absence was arguably based on a "serious health condition" protected by the FMLA; (2) how Electrolux had previously treated Cook's absences for gastric problems; and (3) whether the information submitted by Cook was a proper medical certification under the FMLA. The arbitrator also looked to the regulations governing the FMLA for assistance in making some of these determinations. Also unlike

*Shtab,* in this case the prior arbitral award was not adverse to the grievant—in fact, the November 17, 2004, Order upholding the award ordered Electrolux's compliance, including payment of backpay to Cook. However, these differences do nothing to alleviate the concerns regarding the protection of an individual's federal statutory rights expressed by the *Gardner–Denver* line of cases. As the Court noted in *Gardner–Denver,* even where the collective-bargaining agreement "contains provisions facially similar to those of" the federal statutory right, "other facts may still render arbitral processes comparatively inferior to judicial processes in the protection of" those rights. *Gardner–Denver,* 415 U.S. at 57, 94 S.Ct. at 1024. First, similar to *Shtab,* the matter submitted to the arbitrator was a contractual one, confined to the arbitrator's expertise in interpreting collective-bargaining agreements. *See* Plf.'s Brief, Exh. 1, at 2 ("Did the Company have the 'just cause' required by Article 16 of the working agreement to terminate the employment of the Grievant, Ms. Deborah Cook? If not, what should the remedy be?"). The arbitrator only delved into whether Cook's July 31, 2002, absence should have been considered FMLA leave in order to decide the contractual issue before him. *See Shtab,* 173 F.Supp.2d at 262. Second, "the expertise which qualified [the arbitrator] to decide the issues governed by the collective bargaining agreement did not extend to the determination of [Cook's] federal statutory rights under the FMLA." *Id.* Third, the key differences between arbitral and judicial factfinding still remain. *Gardner–Denver,* 415 U.S. at 57–58, 94 S.Ct. at 1024. And finally, the UAW had exclusive control over how the grievance was presented—and as such, may have pursued the claim less vigorously or made different strategic decisions than Cook would have had she been a part of the arbitration. *Barrentine,* 450

U.S. at 742, 101 S.Ct. at 1446; *McDonald,* 466 U.S. at 291, 104 S.Ct. at 1803; *Shtab,* 173 F.Supp.2d at 262. Therefore, although both the November 17, 2004, Order, confirming the arbitration award and the case at hand arose from the same factual predicate, the claims are separate and distinct in that, by submitting her grievance to arbitration, Cook sought to vindicate her contractual rights under the collective-bargaining agreement, whereas by bringing her FMLA claim in a judicial forum, she asserts an "independent statutory right[ ] accorded by Congress." *Gardner–Denver,* 415 U.S. at 49–50, 94 S.Ct. at 1020. As such, the contractual claim asserted in *Electrolux I* is not the same as the FMLA claim brought in this lawsuit. As this factor has not been met, no *res judicata* effect can attach to the November 17, 2004, Order—thus, foreclosing Electrolux's motion for summary judgment. However, in the interest of completeness, and as analysis of the issue bolsters the court's denial of Electrolux's motion for summary judgment, the court will briefly address the other contested issue—whether *Electrolux I* and this suit contained the same parties or their privies.

▮ With regard to who can bring a claim, the FMLA provides as follows:

(2) Right of action

An action to recover the damages or equitable relief prescribed in paragraph (1)· may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any·one or more employees for and in behalf of—

(A) the employees; or

(B) the employees and other employees similarly situated.

29 U.S.C. § 2617(a)(2). Electrolux makes the naked assertion that this statutory text indicates that the UAW could have pursued an FMLA claim on Cook's behalf at the same time it sought arbitral interpretation of the collective-bargaining agreement. ·The court disagrees. The FMLA creates a private right of action only for "eligible employees." *See id.* § 2617(a)(1) (stating that "any employer who violates [the FMLA] shall be liable to any *eligible employee* affected") (emphasis added). The FMLA defines the term "eligible employee" as an employee who has been employed for "at least 12 months by the employer" and "for at least 1,250 hours of service with such employer during the previous 12–month period." *Id.* § 2611(2)(A). Further, the FMLA incorporates the definition of "employee" used by the FLSA, 29 U.S.C. § 2611(3)—which defines "employee" as "any individual employed by an employer" 29 U.S.C. § 203(e)(1). Clearly, the UAW is not an "employee" or "eligible employee" under the FMLA, and thus *did not* have the power to bring an FMLA claim on ,Cook's behalf at the time the grievance was arbitrated. *Id.* §§ 2611(2)(a), (3); *See New York Metro Area Postal Union v. Potter,* 2003 WL 1701909 (S.D.N.Y. Mar.31, 2003) (finding the reasoning of *Integrated Health Services* persuasive · and holding that unions lack standing to bring representative suits on behalf of their members under the FMLA); *Local 100, Serv. Employees Int'l Union, AFL–CIO v. Integrated Health Servs.,* 96 F.Supp.2d 537, 539 (M.D.La. 2000) (noting that "[t]he definition of an employee under the FLSA, which is the· same as that under the FMLA, does not empower ,a union or labor organization to sue on behalf of its members for violation of the FLSA.... [and] that the corresponding definitions of employee in both FLSA and FMLA would seem to similarly preclude unions from those empowered to sue under the FMLA."), *order vacated on other grounds,* 2000 WL 33948946 (M.D.La. Sept.19, 2000). Therefore, while the UAW had standing to bring suit for a breach of the collective-bargaining agreement, *see* 29 U.S.C. § 185(b), it could not

have brought an FMLA claim on behalf of Cook at the time of arbitration.

In addition, Cook was not a party to the arbitration precipitating *Electrolux I* and the November 17, 2004, Order, did not enter an appearance in *Electrolux I,* nor was she represented by counsel either in the arbitration or in *Electrolux I. See Shtab,* 173 F.Supp.2d at 262 (noting that the plaintiff was not a party to the arbitration or represented by counsel as supporting the court's determination that prior arbitral decision did not have a preclusive effect). Further, the court does not find any merit in Electrolux's argument that Cook and the UAW were in privity at the time of the arbitration that precipitated the November 17, 2004, Order—as all of the cases Electrolux cites in support of this position are distinguishable from the

case at hand.[5] It is true the Cook had an interest in the arbitration procedure, but as explained above, it was limited to her interest as an UAW member in the interpretation of the collective-bargaining agreement in terms of whether she was terminated for "just cause." As previously discussed, the UAW *could not* have pursued Cook's FMLA claim at the time of arbitration, and therefore the UAW *could not* have represented Cook's legal interest in her FMLA claim at the time of the arbitration—therefore, Cook's legal interests in her FMLA claim, by definition, *were not* represented at the arbitration. As such, the court finds that Cook was not in privity with the UAW during the arbitration of her grievance, nor during challenge of the arbitral decision precipitating the November 17, 2004, Order.

**5.** A brief description of each of the cases Electrolux cites in support of its position clearly demonstrates that none of these cases are on "all fours" with the facts in this case in relation to the "parties or their privies" requirement. *See Acree v. Air Line Pilots Assoc.,* 390 F.2d 199, 202 (5th Cir.1968) (finding "same parties or their privies" requirement met where individual union member's interests were represented by union in prior suit by union in which Second Circuit "considered the claims raised by [the union] on behalf of its individual members and dismissed them for lack of jurisdiction over the subject matter."); *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. ACME Precision Prods., Inc.,* 515 F.Supp. 537 (E.D.Mich.1981) ("Where a union sues on behalf of represented employees, the judgment entered in that suit acts as a bar to litigation brought by the represented employees themselves at a later time, if, of course, *the same cause of action is asserted.*") (emphasis added) (citing *Acree*); *Sumaron v. International Longshoremen's and Warehousemen's Union, et al.,* 450 F.Supp. 1026, 1029 (C.D.Cal.1978) (finding union member plaintiffs collaterally estopped from relitigating any issue decided in prior NLRB proceedings conducted by their union); *Christensen v. Grant County Hosp. Dist. No. 1,* 152 Wash.2d 299, 96 P.3d 957, 962, 968 (2004) (noting that plaintiff *conceded* that "identical issues, final judgment, *and privity* requirements" were satisfied, and finding only additional factors required by Washington law prior for collateral estoppel to attach were in issue, and holding plaintiff collaterally estopped from pursuing issue of whether he was discharged in retaliation for union activities); *see Iowa Electric Light and Power Company v. Mobile Aerial Towers, Inc.,* 723 F.2d 50, (8th Cir.1983) (holding plaintiff-power company precluded from bringing suit against defendant where it was so connected in interest to the individual plaintiffs in prior suits arising out of the same factual occurrence that it had a full and fair opportunity to litigate its claims in the prior proceeding). In none of these cases was the prior decision an arbitral decision (or confirmation of an arbitral decision), but rather a prior decision by a judicial forum or administrative body. Additionally, in each of these cases the claims/issues were identical—a finding this court has already foreclosed in this case based on the rationale of the *Gardner–Denver* line of cases. Finally, none of these cases has any precedential value to this court. In sum, the court finds these authorities both uncontrolling and unpersuasive, and rejects Electrolux's argument that Cook was in privity with the UAW at the time her grievance was arbitrated.

In sum, as this suit and the arbitration precipitating *Electrolux I* do not include the same claims or the same parties or their privies, the November 17, 2004, Order is not accorded a *res judicata* effect such that the claims in this suit would be barred. Therefore, Electrolux's motion for summary judgment based on *res judicata* is **denied**.

### 2. Collateral estoppel

#### a. The law

 "Collateral estoppel 'bars the relitigation of factual or legal issues that were determined in a prior . . . court action, and applies to bar relitigation in federal court of issues previously determined.'" *Banks*, 390 F.3d at 1054 (quoting *In re Elisabeth Scarborough*, 171 F.3d 638, 641 (8th Cir.1999)); *see Environmental Dynamics, Inc. v. Robert Tyer and Assocs., Inc.*, 929 F.Supp. 1212, 1245 (N.D.Iowa 1996) (noting that the doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (citations and quotation omitted). Collateral estoppel is appropriate when: "(1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action." *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir.1989); *see Manion v. Nagin*, 392 F.3d 294 (8th Cir.2004) (citing elements); *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1016 (8th Cir.2002) (citing elements); *In re Anderberg–Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir.

1997); *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983); *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213, 218–19 (8th Cir.1977) (citing elements); *see also Plough*, 70 F.3d at 516 (8th Cir.1995) (citing identical factors in "issue preclusion" analysis under Iowa law).

#### b. Arguments of the parties

In her cross-motion for partial summary judgment, Cook attempts to use the November 17, 2004, Order offensively to collaterally estop Electrolux from arguing that it did not violate the FMLA. Cook argues that because the arbitrator *had* to answer the question of whether Electrolux violated the FMLA in order to determine if Electrolux had terminated Cook for "just cause" under the collective-bargaining agreement, under the doctrine of issue preclusion, Electrolux is now estopped from arguing that it did not violate the FMLA and Cook is entitled to an order stating that Electrolux discharged her in violation of the FMLA. Cook contends that each of the requirements necessary for collateral estoppel to attach are present.

Electrolux resists on the ground that the November 17, 2004, Order confirming the arbitration award is not legally preclusive of Cook's statutory FMLA claim as the November 17, 2004, Order "examined the FMLA issue . . . within the context of the extraordinary level of deference owed to labor relations arbitrators." Deft.'s Combined Brief, Doc. No. 24, at 3. Therefore, rather than conducting a *de novo* review of the alleged FMLA violation, the court was bound to consider only whether the arbitration award was in "manifest disregard of the law." *Id.* (citing *Electrolux I*). Electrolux asserts that the extraordinary deference the court was required to give the arbitrator's decision in *Electrolux I* defeats the plaintiff's argument that the November 17, 2004, Order precludes Elec-

trolux from arguing that Cook's discharge was *not* in violation of the FMLA.

In reply, Cook discredits Electrolux's resistance by arguing that allowing Electrolux to contest whether or not it violated the FMLA could lead to inconsistent results—such as *Electrolux I* confirming the arbitration award, finding Cook's absence should have been counted as FMLA leave, and another determination in this case that no FMLA violation occurred. Cook concedes that the arbitrator in *Electrolux I* was not charged primarily with determining whether an FMLA violation had occurred, but rather with a determination of whether Electrolux had "just cause" to terminate her. Finally, Cook states that the essence of her argument for preclusive effect of the arbitral decision is grounded in a footnote in *Gardner–Denver* which indicates that an arbitral decision that "gives full consideration to an employee's [federal] rights" should be accorded great weight. *Gardner–Denver*, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21

#### c. Analysis

For the same reasons that arbitral awards are not accorded a *res judicata* effect, courts have also found that prior arbitral decisions should not be accorded issue preclusive effect. *See Plumley v. Southern Container, Inc.*, 303 F.3d 364, 373–74 (1st Cir.2002) (holding that employer was not collaterally estopped, by virtue of prior arbitration award, from disputing the plaintiff's FMLA eligibility); *Johnson v. University of Wisconsin–Milwaukee*, 783 F.2d 59, 62 (7th Cir.1986) ("Although both [*Gardner–Denver*] and *McDonald* involved the attempted use by the defendant of a prior arbitration against the plaintiff, the same policy reasons for not giving the arbitration preclusive effect apply when the plaintiff attempts to use a prior arbitration against the defendant."); *Slaughter v. American Building Maintenance Co. of New York*, 64 F.Supp.2d 319, 331

(S.D.N.Y.1999) (dismissing the defendant's collateral estoppel affirmative defense premised on prior adverse arbitral decision "[t]o the extent that ... [it] seeks to insulate [the defendant] from FMLA or other liability not premised upon the collective bargaining agreement."); *Thoele v. United States Postal Serv.*, 996 F.Supp. 818, 821 (N.D.Ill.1998) (holding that arbitrator's statement in arbitral decision that plaintiff-employee was eligible for leave under the FMLA unless otherwise notified by his employer did not preclude, under doctrine of issue preclusion, finding in this suit that plaintiff was ineligible for FMLA leave despite employer-defendant's failure to notify him). In resolving this issue, the court finds the case of *Dillaway v. Ferrante*, 2003 WL 23109696 (D.Minn. Dec.9, 2003), particularly instructive.

In *Dillaway*, the plaintiff grieved the termination of his employment contending that he was discharged without just cause as his leave was FMLA qualified. *Id.* at *3. The grievance proceeded to arbitration, which ultimately resulted in the grievance being sustained as well as an arbitral award ordering reinstatement and backpay. *Id.* The plaintiff then pursued a judicial forum, claiming that his termination was a violation of the FMLA, and asserting that the arbitrator's decision that he met the requirements for FMLA leave precluded, under the doctrine of collateral estoppel, the defendants from arguing to the contrary. *Id.* at *5–6. In addressing the issue of whether an employee-favorable arbitration decision should have a preclusive effect, the court first noted that

> [t]he majority of cases dealing with the preclusive effect of arbitrations pursuant to [collective-bargaining agreements] come at the question from a different angle—typically, the employee either failed to submit his or her complaint to arbitration, or suffered an adverse arbitration decision. In such situations, it is relatively clear that the employee can

pursue his or her claim unencumbered by either the failure to arbitrate, or the employee-adverse arbitration decision. In other words, in the typical case, there is no collateral estoppel effect of employee-adverse arbitration decisions.

*Id.* at *6 (citations omitted). After noting the rationales behind the refusal of courts to accord prior arbitral decisions preclusive effect (i.e. differences in fact-finding, limited expertise of arbitrator, authority of arbitrator derived solely from the contract, and potential to undermine Congress's intent in enacting employee-protective statutes), *id.* at *7 (citing *Gardner–Denver*, 415 U.S. at 51, 94 S.Ct. 1011, and *Johnson*, 783 F.2d at 62), and noting that no other court in the circuit had dealt with the preclusive effect of an employee-favorable arbitral decision on a subsequent FMLA claim brought in a judicial forum, the court held:

> The court agrees with those courts that do not afford preclusive effect to employee-favorable arbitration decisions. "[T]he same policy reasons for not giving the arbitration preclusive effect apply when the plaintiff attempts to use a prior arbitration against the defendant." *Johnson*, 783 F.2d at 62. The Court is especially concerned that a contrary holding would presume arbitrators have authority beyond that instilled by the parties' agreement—that is an authority

to invoke public laws that potentially conflict with the collective-bargaining agreement. This is an authority that the Supreme Court consistently holds arbitrators do not have. *Gardner–Douglas*, 466 U.S. at 53(sic).

*Id.* at *7. For these reasons, the court ultimately held that the prior employee-favorable arbitral decision could not be used offensively to preclude the defendant from litigating whether or not the plaintiff's termination was in violation of the FMLA. *Id.* This court finds *Dillaway* persuasive and squarely on point with the facts presented in this case. Further, the policy reasons set forth by the *Gardner–Denver* line of cases for not affording prior arbitral decisions preclusive effect are as present in the plaintiff's attempt to offensively use the November 17, 2004, Order to preclude a determination of the FMLA issue as they were in the defendant's attempt to use the November 17, 2004, Order to prevent the plaintiff from bringing this suit. Therefore, as in *Dillaway*, the plaintiff's attempted offensive use of the plaintiff-favorable outcome of the November 17, 2004, Order to bar relitigation of whether Electrolux violated the FMLA must fail.

Further, the court finds Cook's reliance on *Gardner–Denver* in support of her collateral estoppel argument misplaced. The footnote cited by Cook,[6] supposedly in sup-

---

**6.** Footnote 21 of *Gardner–Denver* provides:

We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's

Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum.

*Gardner–Denver*, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21.

port of her collateral estoppel argument, is in reference to the Court's finding that "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Gardner–Denver*, 415 U.S. at 60, 94 S.Ct. at 1025. The footnote merely sets forth factors a court should look at to determine the weight that should be accorded to the prior arbitral decision. *Id.* at 60 n. 21, 94 S.Ct. at 1025 n. 21. At no point does the Court hold that a culmination of these factors results in the prior arbitral decision acquiring a preclusive effect.

For these reasons, the court **denies** Cook's motion for partial cross-summary judgment on her FMLA claim on collateral estoppel grounds. Further, as the court has also previously denied Electrolux's motion for summary judgment on *res judicata* grounds, the court must now examine Electrolux's motion for partial summary judgment on Cook's IWPCL claim.

### D. Cook's IWPCL Claim

#### 1. Is backpay "wages" under the IWPCL?

##### a. Arguments of the parties

Electrolux argues that because backpay, by definition, is a remedial remedy that is not compensation for Cook's "labor or service," backpay is clearly not "wages" as defined under the IWPCL, and therefore the plaintiff's IWPCL claim must fail. In support of its position, Electrolux relies primarily on the case of *Clarey v. K–Products, Inc.*, 514 N.W.2d 900 (Iowa 1994).

Cook asserts that Electrolux's reliance on *Clarey* is misplaced as factual differences distinguish this case from *Clarey*. Specifically, Cook argues that *Clarey* dealt with a claim for attorney's fees in a tort case based on wrongful termination, whereas in this case there is an independent claim for wage collection apart from any tort/wrongful termination in that Cook

is here seeking to collect the wages the arbitrator determined she was entitled to in awarding her backpay. As such, Cook maintains that Electrolux's failure to pay the backpay awarded by the arbitrator amounts to a cause of action for unpaid wages under the IWPCL.

#### b. The law

The Iowa Wage Payment Collection Law is designed " 'to facilitate the collection of wages owed to employees.' " *Jeanes v. Allied Life Ins. Co.*, 300 F.3d 938, 943–44 (8th Cir.2002) (quoting *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 201 (Iowa 1997)); *see Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 596 (Iowa 1999) (noting that the purpose behind the IWPCL is to "facilitate collection of wages by employees"). "Wages" under the IWPCL are defined as follows:

"Wages" means compensation owed by an employer for:

a. Labor or services rendered by an employee, whether determined on a time, task, piece, commission or other basis of calculation.

b. Vacation, holiday, sick leave, and severance payments which are due an employee under an agreement with the employer or under a policy of the employer.

c. Any payments to the employee or to a fund for the benefit of the employee, including but not limited to payments for medical, health, hospital, welfare, pension, or profit sharing, which are due an employee under an agreement with the employer or under a policy of the employer. . . .

d. Expenses incurred and recoverable under a health benefit plan.

IOWA CODE § 91A.2(7). "Wages" is defined broadly in § 91A.2(7) in order to "facilitate the public policy of allowing employees to collect wages owed to them by their employers." *Hornby v. State*, 559 N.W.2d 23, 25 (Iowa 1997); *see also Kartheiser v. American Nat'l Can Co.*, 271 F.3d 1135, 1136(8th Cir.2001) (citing *Hornby* and noting that the IWPCL "is remedial in nature and is meant to be liberally construed"). "If an employer fails to pay an employee wages, the employer is subject to liability for unpaid wages or expenses, court costs, and attorney fees." *Phipps*, 558 N.W.2d at 203 (citing IOWA CODE § 91A.8 [7] and *Dallenbach v. MAPCO Gas Prods., Inc.*, 459 N.W.2d 483, 489 (Iowa 1990)). When an employee prevails on a wage claim under the IWPCL the court is *required* to assess attorney fees and costs against the employer." *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339 (Iowa 2000) ("*Gabelmann II*"); *see Audus v. Sabre Communications Corp.*, 554 N.W.2d 868, 874 (Iowa 1996) ("The trial court must assess attorney fees when an employee prevails in a suit brought under chapter 91A and requests such attorney fees.").

For example, Iowa courts have held the following met the statutory definition of "wages" under the IWPCL: (1) bonuses, *see Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 585 (Iowa 2002); *Dallenbach v. MAPCO Gas Prods., Inc.*, 459 N.W.2d 483, 488 (Iowa 1990) (annual bonus was "wages" under IWPCL where employer was contractually bound to pay the bonus as part of employee's compensation for labor or services provided); (2) long-term disability benefits, *see Hornby v. State*, 559 N.W.2d 23, 25–26 (Iowa 1997) (long-term disability benefits were "wages" under § 91A.2(7)(c) where plaintiff had a contractual right to such benefits); (3) monthly housing allowance *Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 483 (Iowa 1997) ("*Gabelmann I*"); and (4) a "gainsharing practice" *Phipps*, 558 N.W.2d at 201 (finding that a "gainsharing practice" in which the employer gave employees an opportunity to receive money based on the performance of the company was considered part of employee's compensation and therefore "wages" under the IWPCL).

Electrolux cites *Clarey v. K–Products, Inc.*, 514 N.W.2d 900 (Iowa 1994), as the primary support for its position that backpay is not "wages" under the IWPCL. In *Clarey*, the plaintiff sued her former employer for wrongful termination in retaliation for seeking workers' compensation benefits. *Id.* at 902. The jury verdict awarded the plaintiff damages for past loss of wages, past mental and emotional distress, future loss of wages and future mental and emotional distress.[8] *Id.* One issue, among many, on appeal was the trial court's denial of the plaintiff's claim for attorney's fees under Iowa Code § 91A.8—which makes an employer liable for the attorney's fees of an employee from whom it has intentionally failed to pay wages—apparently based on the argument that the award for past loss of wages showed that the employer had intentionally failed to pay wages due the employee. *Id.* at 904. In affirming the denial of the plaintiff's claim for attorney's fees under § 91A.8, the court held:

7. Iowa Code § 91A.8 provides:
 When it has been shown that an employer has intentionally failed to pay an employee *wages* ..., whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any *wages* ... that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court

> costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. IOWA CODE § 91A.8 (emphasis added).

8. Future damages awards were reduced to present value. *Id.* at 902.

Under this statute, "wages" do not include damages arising out of a wrongful termination but only wages due and owing for past services rendered by the employee.

*Id.* at 905.

Considering the standards for summary judgment, the arguments of the parties, and the pertinent law, the court now turns to an analysis of the issue.

### c. Analysis

■■■ In arguing against summary judgment on her IWPCL claim, Cook affords great effort to distinguishing this case from that before the Iowa Supreme Court in *Clarey*. According to Cook, *Clarey* holds only that an award of past lost wages by a jury does not generate a claim for attorney's fees under the IWPCL for failure to pay past due wages. On the other hand, under Cook's rationale, where an employer *fails to pay* an award of backpay or lost wages, that failure to pay amounts to a claim for unpaid wages under the IWPCL—and therefore Cook's IWPCL claim against Electrolux for failing to pay the arbitrator's award of backpay should survive summary judgment.

The arbitrator awarded Cook backpay in the amount of lost wages and benefits to compensate her for the reasonable value of her loss of time in her occupation due to her wrongful termination by Electrolux without "just cause." As in *Clarey*, this backpay award amounts to "damages arising out of a wrongful termination." *Clarey*, 514 N.W.2d at 905. As "damages arising out of a wrongful termination" do not constitute "wages" under the IWPCL, neither can failure to pay "damages arising out of a wrongful termination" be classified as a claim for unpaid "wages" under the IWPCL. *Id.* A plain reading of the IWPCL indicates that "wages" are "compensation owed by an employer for ... [l]abor or services rendered by an employ-

ee...." IOWA CODE § 91A.2(7)(a), and *Clarey* makes clear that "wages" include only that "due and owing *for past services rendered* by the employee." *Clarey*, 514 N.W.2d at 905. (emphasis added). An award of backpay in the amount of lost past wages is clearly *not* an award for labor or services rendered by Cook, but rather a damage award intended to compensate Cook for missing out on working for Electrolux due to her wrongful termination. The text of the IWPCL clearly indicates that it was intended to provide a cause of action where employers withheld compensation from an employee for work and services rendered by that employee—not as a mechanism by which to enforce a damage award for wrongful termination. Further, Electrolux's failure to pay the backpay award thus far can be explained by the fact that until very recently, Electrolux was embroiled in litigation against the UAW over whether the arbitration award, awarding Cook reinstatement and backpay, was unfaithful to the collective bargaining agreement. *See* November 17, 2004, Order (upholding the arbitration award and ordering Electrolux to comply fully with the arbitration award, including paying Cook backpay for lost wages and benefits from August 2, 2002 through December 5, 2003).

This is one such instance in which "the unresolved issues are primarily legal rather than factual" and "summary judgment is particularly appropriate." *Aucutt*, 85 F.3d at 1315 (8th Cir.1996) (quoting *Crain v. Board of Police Com'rs of Metropolitan Police Dept. of the City of St. Louis*, 920 F.2d 1402, 1405–06 (8th Cir.1990)). As the arbitrator's award of backpay does not amount to "wages" under the IWPCL, Electrolux's failure to pay the backpay award cannot give rise to a claim under the IWPCL and Electrolux is entitled to judgment as a matter of law on the IWPCL claim. Therefore, Electrolux's

partial motion of summary judgment as to Cook's IWPCL claim is **granted.**[9]

### III. CONCLUSION

As the November 17, 2004, Order of this court has no preclusive effect on this suit, both Electrolux's Motion for Summary Judgment Based Upon *Res Judicata* (Doc. No. 20) and Cook's partial Motion for Summary Judgment based on collateral estoppel (Doc. No. 22) are **denied.** Additionally, for the reasons set forth above, Electrolux's partial motion for summary judgment as to Cook's IWPCL claim (Doc. No. 6) is granted.

**IT IS SO ORDERED.**

---

**9.** As the court has already determined that summary judgment on the IWPCL claim is appropriate as backpay is not "wages" as defined in the IWPCL, the court need not address the other ground—preemption by § 301 of the Labor Management Relations Act of 1947—under which Electrolux asserts summary judgment on the IWPCL claim is appropriate.